# EXHIBIT I

UNITED STATES DEPARTMENT OF STATE
BUREAU OF POLITICAL MILITARY AFFAIRS
WASHINGTON, D.C. 20520

In the Matter of:

ITT Industries Inc.

     Indiana

Respondent

## CONSENT AGREEMENT

WHEREAS, the Directorate of Defense Trade Controls, Bureau of Political Military Affairs, U.S. Department of State ("Department") has notified ITT Industries Inc. ("Respondent") of its intent to institute an administrative proceeding pursuant to the Arms Export Control Act ("Act") (22 U.S.C. § 2778(e)) and its implementing regulations, the International Traffic in Arms Regulations ("Regulations") (22 C.F.R. § 120-130), based on allegations that the Respondent violated Section 38 of the Act and § 127 of the Regulations as set forth in a Draft Charging Letter attached hereto and incorporated by reference, herein, by violating the express terms and conditions of Department of State munitions licenses and exporting defense services without munitions licenses or other authorizations;

WHEREAS, the substantive allegations in the Draft Charging Letter were violations of the Act and the ITAR or Regulations by the Respondent in connection with the unauthorized export of night vision products and the unauthorized export of space remote sensing technical data and defense services;

WHEREAS, the Respondent has reviewed the Draft Charging Letter and this Consent Agreement and fully understands these documents and enters into this Agreement voluntarily and with full knowledge of its rights;

2

WHEREAS, the Respondent wishes to settle and dispose of all civil charges, penalties and sanctions associated with alleged violations of Section 38 of the Act or the Regulations arising from facts which the Respondent has disclosed in writing to the Department or that have been identified in the Draft Charging Letter by entering into this Consent Agreement;

WHEREAS, the Department and the Respondent agree to be bound by this Agreement and a related administrative order ("Order") (attached) to be entered by the Assistant Secretary of State for Political Military Affairs.

Now, WHEREFORE, the Department and the Respondent agree as follows:

Parties

(1)   The Parties to this Agreement are the Department and the Respondent, including all of the Respondent's operating divisions and subsidiaries and their assignees and successors to the extent they are subject to the Department's regulation under the Act and Regulations.

Jurisdiction

(2)    The Department has jurisdiction over the Respondent under the Act and the Regulations in connection with the matters identified in the Draft Charging Letter.

Defense Services and Foreign Defense Articles

(3)    The Respondent acknowledges and accepts that the definition of "defense services" in the Regulations is well established and clearly understood by them as setting out responsibilities and requirements which are binding as a matter of law and regulation on them; the furnishing of defense services to foreign persons -- regardless of whether the underlying defense article(s) is of U.S. or foreign origin -- is appropriately subjected to control under the Regulations by the Department even when no technical data is involved (e.g., all the information relied upon in furnishing defense services to a foreign government or foreign person is in the public domain); and, the law and regulations governing "defense services" and proposals to foreign persons are sufficiently clear and specific as to be enforceable by the U.S. Government on criminal and civil grounds and the Respondent is responsible and obligated as a matter of law and regulation to comply with the

3

requirements of such laws and regulations as they pertain to "defense services" and related matters.

<u>Cooperation by the Respondent</u>

(4)    The Department recognizes that the Respondent has disclosed voluntarily all information concerning the facts and circumstances of the alleged violations to the Department and has fully cooperated with the Department.

<u>Penalty</u>

(5)    The Respondent agrees that it shall pay in fines and in remedial compliance measures a civil penalty of $8 million dollars, comprised of the amounts stipulated in subparagraphs (a) and (b), in complete settlement of alleged civil violations of Section 38 of the Act arising from facts which the Respondent has disclosed in writing to the Department or that have been identified in the Department's Draft Charging Letter. This civil penalty shall be payable as follows:

(a)  One Million dollars ($1,000,000) shall be paid to the Department of State within 10 days of signing of the Order. One Million dollars ($1,000,000) shall be paid on the first and second anniversary of the signing of the Order. The Respondent agrees that the effect of any statutory limitation to the collection of the civil penalty imposed by this Agreement shall be tolled until the termination of this Consent Agreement.

(b)  An additional civil penalty of $5 million dollars is hereby assessed for remedial compliance enhancements specified herein and in an agreed "schedule of compliance measures" attached hereto. ITT will apply $5 million of this penalty over a five (5) year period commencing from the date of the signing of the Order for the purpose of defraying a portion of the costs associated with the remedial compliance specified herein and in the "schedule of compliance measures" attached hereto.

(c)  The Respondent will provide annually to the Department on the anniversary of the date of the Order a written accounting of the expenditures associated with the penalty enumerated in (5)(b) above. The accounting shall be accompanied by a copy of a certification by the Respondent to the U.S. Department of Defense that the expenditures for remedial compliance enhancements for the additional civil penalty enumerated in (5)(b) above have

4

not been treated as allowable costs and allocated to any U.S. government contract for reimbursement.

(d)  The Respondent is precluded from treating the amounts expended for remedial compliance enhancements for the additional civil penalty enumerated in (5)(b) above as allowable costs and allocating those costs to any U.S. government contract for reimbursement.  In the event Respondent violates this prohibition, the Department will deem it a failure to apply funds appropriately for the required purposes as specified in paragraph (e)

(e)  Any failure to use these funds appropriately for this purpose or to provide a satisfactory accounting shall be deemed by the Department as a failure to comply with the requirements of paragraph (b) and the Respondent shall be required to pay this amount to the Department of State immediately.

## Debarment

(6)    The Department has determined that a prospective debarment of the Respondent is not appropriate at this time in view of the Respondent's acknowledgement of the seriousness of the various violations outlined in the Draft Charging Letter and for the consequences of those alleged violations and their agreement to significant remedial actions, including efforts to improve the Respondent's corporate compliance programs as specified herein.  The Department reserves the right to consider imposing additional sanctions, including debarment, in the event that the Respondent for any reason does not fulfill the provisions of this Consent Agreement or is responsible for other violations under the Act or other statutes specified in 22 C.F.R. § 120.27.

## On-site Audits

(7)    For the purpose of assessing compliance with the provisions of the Act, the Regulations and future export licenses and other authorizations, the Respondent agrees to arrange and facilitate, with minimum advance notice, on-site audits of its business units, wherever situated, by the Department during the five-year term of this agreement commencing on the signing of the Order.

5

Understandings:

(8)   No agreement, understanding, representation or interpretation not contained
in this agreement or referenced herein may be used to vary or otherwise affect the
terms of this Agreement or the Order, when entered, nor shall this Agreement serve
to bind, constrain, or otherwise limit any action by any other agency or department
of the United States Government with respect to the facts and circumstances
addressed herein.  Specifically, the Respondent acknowledges and accepts that
there is no understanding expressed or implied through this agreement with respect
to a final decision by the Department of State concerning their interest in the
approval of export licenses or other U.S. Government export authorizations.  The
Department agrees, assuming the Respondent's adherence to the terms of this
Agreement, and the Act and the Regulations more broadly, that decisions
concerning future export license applications for the Respondent will be made on
the basis of the security and foreign policy interests of the United States.

(9)   /The Department and the Respondent agree that this Agreement
is for settlement purposes only.  For purposes of this Agreement, the Respondent
neither admits nor denies the allegations in the Draft Charging Letter (including
without limitation those set forth in the "Relevant Facts and Charges" section of
that letter).  That said, the Respondent acknowledges the nature and seriousness of
the offenses alleged by the Department in the Draft Charging Letter, including the
risk of harm to the security and foreign policy interests of the United States, and
agrees to pay a civil penalty, and also to establish an effective corporate
compliance program that will seek to prevent any future violations such as those
addressed in the Draft Charging Letter.  If this Consent Agreement is not approved
pursuant to an Order entered into by the Assistant Secretary for Political Military
Affairs, the Department and the Respondent agree that they may not use this
Agreement in any administrative or judicial proceeding and that none of the parties
shall be bound by the settlement terms contained in this Agreement in any
subsequent administrative or judicial proceeding.

(10)   The Department agrees that, upon signing of the Order and entry into force
of this Agreement, this Agreement resolves with respect to the Respondent any
civil penalties or sanctions imposed with respect to violations of Section 38 of the
Act or the Regulations alleged in the Draft Charging Letter or arising from facts
that the Respondents have disclosed in writing to the Department or that have been
identified in the Draft Charging Letter, to include other compliance cases that were

6

under review by the Department that have been separately identified to the Respondent.

## Waiver

(11) The Respondent agrees that, upon signing of the Order and entry into force of this Consent Agreement, they waive all rights to seek administrative or judicial consideration or review of, or to otherwise contest, the validity of this Consent Agreement, the Order or this matter, including in any action that may be brought for the enforcement of any civil fine, penalty or forfeiture in connection with this Consent Agreement except that the Respondent does not waive its aforesaid rights with regard to any alleged violations of this Agreement.

## Documents to be Made Public

(12) The Respondent understands that the Department will make this Agreement, including the Annexes of Compliance Measures, the Draft Charging Letter and the Order, when entered, available to the public in accordance with the Department's practices and procedures.

## Certifications

(13) At the conclusion of the five (5) year term of this Consent Agreement, the General Counsel, ITT Industries and the Director, International Trade and Compliance, ITT Industries will submit to the Director of DTCC a written certification that all aspects of the Consent Agreement have been implemented and that they have assessed ITT Industries' export compliance program and attest that it is adequate to identify violations of the Act and the Regulations to the maximum degree possible and that all additional civil penalties enumerated in (5)(b) above for remedial compliance expenditures were not treated as an allowable cost and allocated to any U.S. Government contract for reimbursement.

(14) This Consent Agreement shall become binding on the Department only when the Assistant Secretary for Political Military Affairs approves it by entering the Order, which will have the same force and effect as a decision and Order after a full administrative hearing on the record.

7

U.S. Department of State

*Lincoln P. Bloomfield, Jr.* (signature)

Lincoln P. Bloomfield, Jr.
Assistant Secretary for
Political Military Affairs

*November 1, 2004*
(Date)

ITT Industries, Inc.

*Vincent A. Maffeo* (signature)

Vincent A. Maffeo
Senior Vice President and General Counsel

*OCT. 25, 2004*
(Date)

8

Annex

ITT Industries Inc.:

Schedule of Compliance Measures

ITT Industries Inc. ("ITT"), reflecting its commitment to conduct its business in full compliance with the Arms Export Control Act (the "Act") and the International Traffic in Arms Regulations (the "ITAR" or "Regulations"), and in order to ensure, in particular, that there are no unauthorized exports of ITAR controlled night vision or space remote sensing defense articles or defense services whatsoever to any foreign person, including any of its foreign partners, or any other defense article or defense services, agrees to implement the following remedial measures and such additional measures as may be mutually agreed upon by ITT and the Director, Defense Trade Controls Compliance ("DTCC"), and agree further that these measures will be honored for a five (5) year period, unless otherwise noted, as part of the Consent Agreement entered into with the Department of State:

ITT Official Designated for Consent Agreement Compliance and Oversight

1. The Senior Vice President and General Counsel, ITT Industries will designate the Director, International Trade and Compliance, ITT Industries with responsibilities for: (a) strengthening ITT's export compliance program with specific attention to those areas associated with the alleged violations in the Draft Charging Letter; (b) overseeing and improving written policies and procedures for all ITT activities subject to the Regulations; and, (c) ensuring that ITT implements the requirements of this Agreement and accompanying Order. In fulfilling the responsibilities set forth in this Consent Agreement, the Director, International Trade and Compliance may, at his/her sole discretion, present any disagreement with ITT's management directly to any or all among ITT's President and Chief Executive Officer, the ITT Board of Directors or the Director, DTCC. ITT's Senior Vice President and General Counsel may participate in discussions initiated by the Director, International Trade and Compliance with the Board of Directors at the Director, International Trade and Compliance or Board of Directors discretion. ITT's Chief Executive Officer shall consent to the following terms and conditions regarding the powers, duties, authorities, and responsibilities of the Director, International Trade and Compliance as they pertain to this Consent Agreement:

9

(A)  The Director, International Trade and Compliance shall have the power and authority to oversee and monitor ITT's compliance with the terms of this Consent Agreement and accompanying Order.  Within fifteen (15) days of the signing of the Order, ITT shall confer this authority in writing and make this known throughout ITT.  ITT shall provide a copy of this notice to the Director, DTCC.

(B)  If for any reason the Director, International Trade and Compliance is unable to serve in this capacity for the duration of this Agreement, ITT's Senior Vice President and General Counsel may recommend a successor acceptable to the Director, DTCC.  The Director, DTCC shall be informed at least thirty (30) days in advance of a new appointment.  If the Director, International Trade and Compliance is unable to carry out his responsibilities on a temporary basis (i.e., not to exceed thirty (30) days), ITT's Senior Vice President and General Counsel shall assume the power and authority of the Director, International Trade and Compliance in the interim.

(C)  The Director, International Trade and Compliance shall have full and complete access to ITT's personnel, books, records, documents, facilities and technical information relating to this Consent Agreement, Order and pertinent munitions authorizations, licenses, guidance and related materials involving the export of defense articles and defense services by ITT.

(D)  The Director, International Trade and Compliance, with the approval of the Senior Vice President and General Counsel, ITT Industries, which shall not be unreasonably withheld, shall have the authority to employ, at the expense of ITT, such assistants and professional staff as are necessary to carry out the additional responsibilities of the Director, International Trade and Compliance relating to the Consent Agreement.  Such expenses, including salaries and expenses of the Director, International Trade and Compliance directly related to this Agreement, may be paid from the $5 million additional civil penalty enumerated in paragraph (5)(b) of the Consent Agreement.

(E)  The Director, DTCC may request specific inquiries by the Director, International Trade and Compliance as may be necessary or appropriate to ensure compliance with the Regulations and the terms and conditions of authorizations DTCC has provided to ITT for the export of defense articles and defense services.

10

(F)  The Director, International Trade and Compliance shall provide reports to ITT's Senior Vice President and General Counsel, ITT's Board of Directors, and the Director, DTCC concerning ITT's compliance with this Agreement and Order. These reports shall include conclusions and any recommendations necessary to ensure strict compliance with the Act and Regulations; state whether the Director, International Trade and Compliance has encountered any difficulties in exercising the duties and responsibilities assigned herein; describe any and all instances of non-compliance by ITT without waiving ITT's ability to submit voluntary disclosures; and advise on progress in implementing previous recommendations advanced by the Director, International Trade and Compliance.  These reports shall be provided every ninety (90) days for a period of six months from the date of the signing of the Order; and semi-annually thereafter during the remainder of the Consent Agreement.

Strengthened Compliance Training

2. Within 270 days of the signing of the Order, ITT will have instituted strengthened corporate export compliance procedures focused principally on ITT's business operations such that: (a) all ITT employees of business units engaged in night vision or space remote sensing activities subject to the Act and Regulations are familiar with the Act, the Regulations, and their own and ITT's responsibilities, thereunder; (b) all persons responsible for supervising those employees including senior managers of those units are knowledgeable about the underlying policies and principles of the Act and the Regulations; and (c) there are careful records indicating the names of employees, trainers, and level and area of training received (e.g., use of public domain information in performing defense services, applicability of ITAR to foreign-origin defense articles).

Automated Export Compliance System

3. ITT agrees to institute a comprehensive automated export compliance system to strengthen ITT's internal controls for ensuring compliance with the Act and Regulations.  Within 180 days of the signing of the Order, ITT will have provided to DTCC a "White Paper" for review and concurrence, outlining ITT's proposed automated export compliance system to track the decision process from the initiation of a request for potential export authorization or clarification of an existing authorization to its conclusion, that will reflect ITT's ability to oversee and monitor export activity.  This system will cover the initial identification of all technical data and technical assistance in any form proposed to be disclosed to any

11

foreign persons and will be accessible to DTCC upon request. The automated export compliance system will be implemented within one hundred eighty (180) days of DTCC's concurrence of ITT's proposal. ITT understands that ODTC may, at its sole discretion, not authorize use of exemptions for shipments of unclassified technical data in furtherance of a technical assistance agreement pending the institution of this system.

## Legal Department Oversight

4. Within 30 days of the signing of the Order, ITT will establish measures such that the Senior Vice President and General Counsel of ITT will provide oversight and support to all of its business units for all matters involving the Act and the Regulations. This oversight will also be structured to achieve consistent application of the Act and the Regulations by all of ITT's business units. Toward this end, the ITT General Counsel's office shall consider and implement, where appropriate, those improvements in the compliance programs recommended by the Director, International Trade and Compliance, which have applicability to other ITT business entities. In addition, the Senior Vice President and General Counsel of ITT shall take action such that in each ITT business unit appropriate legal support is made available as necessary to the principal personnel responsible for compliance with the Act and the Regulations and appropriate legal oversight is performed in each business unit with respect to such matters. In addition to other reporting responsibilities, ITT legal staff providing support regarding the Act and the Regulations shall regularly report to the ITT Senior Vice President and General Counsel and Director, International Trade and Compliance with respect to such matters. The Senior Vice President and General Counsel and Director, International Trade and Compliance will have appropriate, documented input in performance reviews of the principal personnel responsible for compliance with the Act and the Regulations.

## Ombudsman Program

5. Within 60 days of the signing of the Order, ITT will publicize the availability of ITT's Ombudsman Program for reporting violations of the Act and the Regulations to ensure that violations may be readily reported via this channel, without fear of recrimination or retaliation. Complaints or concerns about matters involving compliance with the Act and the Regulations will be directed to the Director, International Trade and Compliance who will be responsible for resolving such matters. If the Director, International Trade and Compliance is the subject of the

12

complaint or concern involving the Act and the Regulations, the matter will be referred to the Senior Vice President and General Counsel, ITT Industries for resolution. The Director, International Trade and Compliance shall prepare a semi-annual report assessing the effectiveness of the Ombudsman Program relating to export matters for the Senior Vice President and General Counsel, ITT Industries and will provide a copy to the Director, DTCC. This written report will be in sufficient detail such that the Department may, consistent with its responsibilities under law and regulation, form an opinion about the seriousness of the alleged violations, without disclosing employee confidentiality.

Audit

6. ITT Night Vision shall conduct a review of the functional processes involved in exporting night vision products to verify that the processes (to include production and quality control) are effective to comply with export license authorizations and related provisos. The review will be conducted under the supervision of an expert in process analysis who is independent from the Export Administration Department and other functional departments at ITT Night Vision with responsibility for export activities. Further, the President, ITT Night Vision shall confer in writing necessary rights, powers, access and resources required to perform an independent review and shall make such authority known throughout ITT Night Vision. Within 120 days of the signing of the Order, the Director, International Trade and Compliance, ITT Industries will provide the Director, DTCC with a draft verification plan for the functional process review for review and comment. Within 210 days of the receipt of final comments from the Director, DTCC on the draft verification plan, a written report of the results of the review shall be submitted by the Director, International Trade and Compliance to the Director, DTCC.

7. The Director, International Trade and Compliance will direct an audit that provides a thorough assessment of ITT's implementation of all measures set forth in paragraphs 1-6 above. Within twelve (12) months after the signing of the Order, a draft audit plan will be submitted to the Director, DTCC for review and comment. Within twelve months (12) of the receipt of final comments from the Director, DTCC on the draft audit plan, the audit will be completed and a written report containing recommendations for improvements with respect to measures set forth in paragraphs 1-6 above or compliance with the Act or the Regulations more generally, will be submitted by the Director, International Trade and Compliance to the Director, DTCC.