# EXHIBIT L



# ITT CORP (ITT)

FOUR W RED OAK LANE  
WHITE PLAINS, NY 10604  
914. 641.2000  
http://www.ittind.com

# 10–Q

**FORM 10–Q**  
**Filed on 10/26/2007 – Period: 09/30/2007**  
File Number 001–05672



LIVEDGAR® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

**Table of Contents**

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

# FORM 10–Q

(Mark One)

☑ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended September 30, 2007**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from         to**

**Commission file number 1–5672**

# ITT CORPORATION

| **State of Indiana** | **13–5158950** |
|---|---|
| *(State or Other Jurisdiction of Incorporation or Organization)* | *(I.R.S. Employer Identification Number)* |

**4 West Red Oak Lane, White Plains, NY 10604**
*(Principal Executive Office)*

**Telephone Number: (914) 641–2000**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months and (2) has been subject to such filing requirements for the past 90 days.  Yes ☑   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non–accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b–2 of the Exchange Act. (Check one):
Large accelerated filer ☑    Accelerated filer ☐    Non–accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b–2 of the Exchange Act).  Yes ☐   No ☑

As of October 23, 2007, there were outstanding 181,310,441 shares of common stock ($1 par value per share) of the registrant.

**ITT CORPORATION AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED CONDENSED FINANCIAL STATEMENTS — (Continued)**
**(In millions, except share and per share amounts, unless otherwise stated)**

and it has an accrual for this matter of $10.5 which represents its best estimate. The Company does not anticipate a default on the part of the other PRPs. ITT is pursuing legal claims against some other potentially responsible parties for past and future costs.

The Company operated a facility in Rochester, New York, called Rochester Form Machine from 1979 — 2003. Rochester Form Machine was a former subsidiary of the predecessor ITT Corporation known as ITT Higbie after ITT acquired Higbie in 1972. In August 2003, the Company, through its subsidiary ITT Fluid Handling Systems, entered into an Order on Consent with New York State Department of Environmental Conservation to investigate and remediate facility–related impacts to soil, soil vapor and ground water. As of September 30, 2007, the Company's current estimate for this exposure is between $3.4 and $13.6 and it has an accrual for this matter of $5.5 which represents the best estimate. The Company will pursue claims against certain other PRPs who may share responsibility for impacts.

In a suit filed in 1991 by the Company, in the California Superior Court, Los Angeles County, *ITT Corporation, et al. v. Pacific Indemnity Corporation et al.*, against its insurers, the Company is seeking recovery of costs it incurred in connection with its environmental liabilities including the four listed above. Discovery, procedural matters, changes in California law, and various appeals have prolonged this case. This case had been on appeal before the California Court of Appeals from a decision by the California Superior Court dismissing certain claims of the Company. The dismissed claims were claims where the costs incurred were solely due to administrative (versus judicial) actions. However, in April 2007, the Superior Court vacated its earlier ruling dismissing the claims, and, as a result, the Court of Appeals dismissed the appeal as moot. Thus, the case is now back before Superior Court for another hearing, applying the California Superior Court's ruling in Powerine Oil Co. v. Superior Court. In the event the Company is successful before the Superior Court, it will pursue the administrative claims against its excess insurers. During the course of the litigation, the Company has negotiated settlements with certain defendant insurance companies and is prepared to pursue its legal remedies where reasonable negotiations are not productive.

*Product Liability and Other Matters:*

The Company and its subsidiary Goulds Pumps, Inc. ("Goulds") have been joined as defendants with numerous other industrial companies in product liability lawsuits alleging injury due to asbestos. These claims stem primarily from products sold prior to 1985 that contained a part manufactured by a third party, *e.g.*, a gasket, which allegedly contained asbestos. The asbestos was encapsulated in the gasket (or other) material and was non–friable. In certain other cases, it is alleged that former ITT companies were distributors for other manufacturers' products that may have contained asbestos.

Frequently, the plaintiffs are unable to demonstrate any injury or do not identify any ITT or Goulds product as a source of asbestos exposure. During 2006, 2005 and 2004, ITT and Goulds resolved approximately 8,200, 16,000 and 4,200 claims, respectively. Nearly all of these claims were dismissed, with settlement on a small percentage of claims. The average amount of settlement per plaintiff has been nominal and substantially all defense and settlement costs have been covered by insurance. Based upon past claims experience, available insurance coverage, and after consultation with counsel, management believes that these matters will not have a material adverse effect on the Company's consolidated financial position, results of operations, or cash flows.

The Company is involved in two actions, *Cannon Electric, Inc. et al. v. Ace Property & Casualty Company ("ACE") et al. Superior Court, County of Los Angeles, CA, Case No. BC 290354*, and *Pacific Employers Insurance Company et al., v. ITT Industries, Inc., et al., Supreme Court, County of New York, N.Y., Case No. 03600463*. The parties in both cases are seeking an appropriate allocation of responsibility for the Company's historic asbestos liability exposure among its insurers. The California action is filed in the same venue where the Company's environmental insurance recovery litigation had been pending since 1991. The New York action has been stayed in favor of the California suit. ITT and ACE and Nationwide Indemnity have successfully resolved the matter and the Company is working with other parties in the suit to resolve the matter as to those insurers.

23

**ITT CORPORATION AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED CONDENSED FINANCIAL STATEMENTS — (Continued)**
**(In millions, except share and per share amounts, unless otherwise stated)**

In addition, Utica National ("Utica") and Goulds have negotiated a coverage−in−place agreement to allocate the Goulds' asbestos liabilities between insurance policies issued by Utica and those issued by others. The terms of the settlement will provide the Company with substantial coverage from Utica for asbestos liabilities. The Company will continue to seek coverage from its other insurers for these liabilities.

The Company has been involved in a suit filed in El Paso, Texas, *Irwin Bast et al. v. ITT Industries et al., Sup. Ct., El Paso, Texas, C.A. No. 2002−4730.* This Complaint, filed by both U.S. and German citizens, alleges that ITT and four other major companies failed to warn the plaintiffs of the dangers associated with exposure to x−ray radiation from radar devices. The Complaint also seeks the certification of a class of similarly injured persons. In September 2006, the Court denied the plaintiffs' motion for class certification and motion to amend the complaint. The Court also determined that the plaintiffs failed to identify any persons who had been injured by ITT products and dismissed ITT from the action. In September 2006, the same plaintiff attorneys who filed the El Paso action, filed a companion action in state court in California against the Company, alone, seeking certification of a class of persons who were exposed to ITT radar products but who have not, as yet, exhibited symptoms of injury. The parties have finalized a settlement within the Company's expected range and, as a result, the matter is concluded.

The Company provides an indemnity to U.S. Silica Company for silica personal injury suits against its former subsidiary Pennsylvania Glass Sand filed prior to September 12, 2005. ITT sold the stock of Pennsylvania Glass Sand to U.S. Silica Company in 1985. The Company's indemnity had been paid in part by its historic product liability carrier, however, in September 2005, the carrier communicated to ITT that it would no longer pay a share of the costs. On October 4, 2005, ITT filed a suit against the insurer, *ITT v. Pacific Employers Insurance Co., CA No. 05CV 5223*, seeking its defense costs and indemnity from the insurance carrier for Pennsylvania Glass Sand product liabilities. In April 2007, the Court granted the Company's motion for summary judgment on the carrier's duty to defend the silica cases. All silica related costs, net of insurance recoveries, are shared pursuant to the Distribution Agreement. See "Company History and Certain Relationships" within Part I, Item 1 of the 2006 Annual report on Form 10−K for a description of the Distribution Agreement. The insurer has appealed the Court's decision, and the matter was returned to the Superior Court in part for determination of several factual issues. The Company will continue to seek its past and future defense costs for these cases from this carrier. Management believes that these matters will not have a material adverse effect on the Company's consolidated financial position, results of operations or cash flows.

In December 2005, the Company received an anonymous complaint regarding the possible payment of commissions to foreign government officials by employees of its Nanjing Goulds Pumps company, in Nanjing, China. Such commission payments may violate the Foreign Corrupt Practices Act ("FCPA"). The Company is conducting an investigation utilizing internal and external resources and voluntarily disclosed the preliminary results of the investigation to the United States Department of Justice and the Securities and Exchange Commission. At the conclusion of the investigation, the Government could impose a civil penalty or a criminal fine and/or order that the Company disgorge any profits derived from contracts where inappropriate commissions where paid. The Company does not expect that this matter will have any material adverse impact on the cash flow, results of operations, or financial condition of the Company on a consolidated basis.

On March 27, 2007, the Company reached a settlement relating to an investigation of its ITT Night Vision's compliance with International Traffic in Arms Regulations ("ITAR"). As part of the settlement, the Company pleaded guilty in the United States District Court for the Western District of Virginia to one ITAR violation relating to the improper handling of sensitive documents and one ITAR violation involving making misleading statements. The Company will pay a total of $50.0 in fines, forfeitures and penalties, including a payment of $30.0 made in the first quarter of 2007. This liability was fully accrued at December 31, 2006. The Government has agreed to defer action regarding a third count of ITAR violations pending the Company's implementation of a remedial action plan. The Company has also agreed to invest $50.0 over the next five years in research and development and capital

24

**Table of Contents**

**ITT CORPORATION AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED CONDENSED FINANCIAL STATEMENTS — (Continued)**
**(In millions, except share and per share amounts, unless otherwise stated)**

improvements for its Night Vision products. As a result of the guilty plea, the Company became subject to automatic statutory "debarment" from future export licenses. However, because the debarment is applicable to only a portion of the Company's Night Vision business, it is expected that the net effect of the debarment will restrict less than 5% of total Night Vision sales for a period of not less than one year. The Company can seek reinstatement of export privileges after one year. The Company is currently negotiating an administrative agreement with the Department of State. On October 11, 2007, the Company and the Department of Defense finalized an Administrative Compliance Agreement wherein the Company agreed to take certain remedial actions including implementing compliance programs and appointing an independent monitor for the oversight of the Company's compliance programs. Management believes that theses matters will not have a material adverse effect on the Company's consolidated financial position, results of operations or cash flows.

On April 17, 2007, the Company's Board of Directors received a letter on behalf of a shareholder requesting that the Board take appropriate action against the employees responsible for the actions described in the Company's agreements with the United States Attorney's Office for the Western District of Virginia, which were disclosed on Form 8–K filed on March 30, 2007. The Board of Directors has appointed a Special Litigation Committee to evaluate the request.

On April 20, 2007, the Company received notice of a shareholder derivative action, *Sylvia Piven trustee under trust agreement dated April 3, 1973 f/b/o Sylvia B. Piven, derivatively on behalf of ITT Corporation v. Steve Loranger et al. and ITT Corporation*, U.S. District Court for the Southern District of New York, CA No. 07–CV–2878 (the *"Piven"* action), alleging that the Company's Board of Directors breached their fiduciary duties in connection with the Company's compliance programs at its Night Vision business. The *Piven* Complaint seeks compensatory and punitive damages for the Company from its Directors, the removal of the Directors, and the election of new directors. On July 12, 2007, the Company received notice of a second shareholder derivative action, *Norman Levy, derivatively on behalf of ITT Industries, Inc. v. Steven R. Loranger et al. and ITT Industries, Inc.*, U.S. District Court for the Southern District of New York, CA No. 07–CV–6339 (the *"Levy"* action). The *Levy* Complaint asserts similar claims as the *Piven* Complaint and seeks compensatory damages for the Company from its Directors. On August 20, 2007, the Company received notice of the third derivative action, *Anthony Reale v. Steven R. Loranger et.al and ITT Company [sic]*, U.S. District Court for the Southern District of New York, CA No. 07–CV–6339 (the *"Reale"* action). The *Reale* action also names as John Doe defendants the individual managers allegedly responsible for the actions that gave rise to the Night Vision guilty plea, as well as the law firm that advised the Company in connection with a voluntary disclosure of violations. All three actions are consolidated before the District Court for the Southern District of New York*, In Re ITT Corporation Derivative Litigation*, CA No. 07–CV–2878 (CLB). The Company will file a motion to dismiss the anticipated consolidated Complaint at the appropriate time. Management believes that this suit will not have a material adverse effect on the Company's consolidated financial position, results of operations or cash flows.

**17) Guarantees, Indemnities and Warranties**

*Guarantees & Indemnities*

Since its incorporation in 1920, the Company has acquired and disposed of numerous entities. The related acquisition and disposition agreements contain various representation and warranty clauses and may provide indemnities for a misrepresentation or breach of the representations and warranties by either party. The indemnities address a variety of subjects; the term and monetary amounts of each such indemnity are defined in the specific agreements and may be affected by various conditions and external factors. Many of the indemnities have expired either by operation of law or as a result of the terms of the agreement. The Company does not have a liability recorded for the historic indemnifications and is not aware of any claims or other information that would give rise to material payments under such indemnities. Existing material indemnities are discussed in detail below.

25