EXHIBIT A



212 EAST 39TH STREET
NEW YORK, NEW YORK 10016
PHONE 212 889 3700
FAX 212 684 5191
www.abbeyspanier.com

NANCY KABOOLIAN
nkaboolian@abbeyspanier.com

April 12, 2007

**Via Certified Mail**

The Board of Directors
ITT Corporation
c/o Steven R. Loranger,
Chairman, President and Chief Executive Officer
4 West Red Oak Lane
White Plains, N.Y. 10604

    Re:    ITT Corporation's Violations The Arms Expert Control Act

Dear Mr. Loranger and members of the Board of Directors:

    I write on behalf of our client Anthony Reale, a shareholder of ITT Corporation ("ITT" or the "Company").

    On March 27, 2007, after a federal investigation that lasted for more than five years, ITT pled guilty to violating various provisions of federal law relating to the International Traffic in Arms Regulations ("ITAR"). Specifically, as a result of the activities of certain ITT executives, ITT pled guilty to knowingly and willfully exporting and causing to be exported from the United States to Singapore, the People's Republic of China and the United Kingdom, defense articles, including technical data related to a laser counter-measure for military night-vision goggle systems, without having first obtained from the Department of State the necessary license or written authorization for such exports. In addition, ITT pled guilty to knowingly and willfully failing to state in required consignment-related reports that it was aware that it was violating its export licenses. According to the Deferred Prosecution Agreement entered into by the Company, the State Department uncovered a pattern of violations of the export laws spanning from the 1980's to 2006. This egregious misconduct, has caused ITT to expend millions of dollars in investigation and defense costs, as well as the cost of the substantial monetary fines imposed. ITT's reputation and standing in the business community have been damaged by the Company's guilty plea to federal felony charges.

ABBEY SPANIER RODD ABRAMS & PARADIS, LLP

The Board of Directors
April 12, 2007
Page 2

As a result of the plea agreement, the Company will pay a $50 million fine[1] and agreed to invest in research and development and capital improvements for its night-vision products. The value of those investments is $50 million. However, the plea agreement provides that the government may give any of the technology developed with this money to ITT's competitors, thus causing ITT and its shareholders to finance those companies which compete directly with the Company. In addition, the State Department has placed restrictions on certain exports of night-vision equipment and technical data, and ITT will be prohibited from shipping night-vision devices to specified parties for a period of not less than one year.

Pursuant to Count I of the government's criminal information for violation of the Arms Export Control Act (the "Information"), ITT admitted that it knowingly and willfully exported and caused to be exported from the United States items and information that were designated as "defense articles" on the United States Munitions List without first having obtained permission from the Department of State. This practice and pattern of consistent behavior occurred over at least the six-month period March-August 2001.

Pursuant to Count II of the Information, ITT admitted that it knowingly and willfully omitted material facts that were necessary to make its reports to the government not misleading. In other words, ITT failed to inform the government that it was aware of its violations of federal arms export controls, and failed to take significant corrective action to stop the ongoing violations. This practice and pattern of consistent behavior occurred over the 4½-year period April 2000-October 2004.

Although the prosecution under Count III of the Information was deferred, ITT admitted that the government had probable cause to bring the charges contained therein, which alleged a 10-year practice and pattern of willful and knowing export of prohibited materials without having first obtained permission from the State Department.

Finally, according to the government, ITT's management "created an atmosphere where U.S. export laws were viewed as an obstacle to getting business done." Thus, a combination of grossly inadequate resources devoted to compliance with U.S. export laws and a negative attitude towards compliance led to a regular, corporate-wide pattern of export violations and misrepresentations to the government for at least the past 25 years.

Moreover, management caused the Company to resist the government investigation after it *knew* that criminal conduct had occurred. According to United States Attorney Thomas Brownlee, the Company engaged in this meritless defense to "essentially run the out the clock" on the statute of limitations. Individuals caused the

---

[1] On March 30, 2007 ITT paid $28,000,000 to the U.S. Department of Treasury Forfeiture Fund; $2,000,000 will be paid on the day of sentencing; and $20,000,000 will be paid at the direction of the Department of State.

ABBEY SPANIER RODD ABRAMS & PARADIS, LLP

The Board of Directors
April 12, 2007
Page 3

Company to take action that made it difficult for the government to uncover the full truth, including asserting "questionable privileges" and lying to the government about when the violations had been discovered and for how long they had been occurring.

The individuals responsible for this harm to ITT should be held accountable to the Company for the damage they have caused. Their wrongdoing has cost the Company far in excess of the $100 million in fines and other penalties the Company is paying and will pay. The Company has lost substantial good will, paid bonuses that should not have been paid, and incurred substantial legal fees without any legitimate purpose. As a result of the wrongdoing perpetrated by ITT's executives, we demand that the Company commence legal proceedings against the individuals responsible for this misconduct for their breaches of fiduciary duties, for causing the Company to engage in illegal conduct or for failing properly to oversee the Company's operations so as to prevent such misconduct, and for engaging in violations of law, thereby exposing the Company to millions of dollars in damages.

The individuals responsible for the above-described conduct, and those who chose to continue operating in this fashion while covering up continued violations, should be held accountable to the Company. Their actions in both committing and enabling illegal conduct was deliberate and calculated, and had no legitimate purpose. In this regard I invite your attention to page 4 of ITT's own Code of Corporate Conduct, which states that accountability "is a fundamental value with broad implications."

This constitutes a demand that the Board take the necessary action to identify the wrongdoers and take legal action against them to redress the wrongs they have committed which so grievously harmed ITT. Please respond to this letter within 30 days to advise me of the steps the Board of Directors is taking to identify the persons responsible and to take the necessary action against them.

Very truly yours,

Nancy Kaboolian

# EXHIBIT B

**COPY**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT FILED MAY 27 2004 S.D. OF N.Y.

| | |
|---|---|
| IN RE: AOL TIME WARNER SHAREHOLDER LITIGATION | MASTER FILE NO. 02-CV-6302 • file in SWK |
| This Document Relates to All Actions | |
| WILLIAM FULLERTON and HARDING WILLINGER, Derivatively on Behalf of Nominal Defendant TIME WARNER, INC., Plaintiffs, v. JAMES L. BARKSDALE, et al, Defendants, and TIME WARNER, INC., Nominal Defendant. | Civil Action No. 03 CV 9860 <br><br> JURY TRIAL DEMANDED |

MICROFILM 3:00 PM MAY 27 2004

### PRE-TRIAL ORDER NO. 2

NOW, this 26 day of May, 2004, upon the Motion of Plaintiffs Fullerton and Willinger to Modify Unopposed Pre-Trial Order No. 1, it is hereby ORDERED that in the interests of judicial economy and the materially differing legal and factual positions of the various plaintiffs relative to Nominal Defendant Time Warner, Inc., formerly known as AOL Time Warner, Inc. ("TW"):

1. The Motion of Plaintiffs Fullerton and Willinger is GRANTED.


COPIES MAILED

## MASTER FILE, MASTER DOCKET AND SEPARATE ACTION DOCKETS

2. The caption of this action shall be "Time Warner Shareholder Derivative Litigation" and the files of this action shall be maintained in one file under Master File No. 02-CV-6302. Any other shareholder derivative actions now pending or hereafter filed in this District which arise out of the same facts as alleged in the above-identified cases shall be coordinated for all purposes if, as, and when they are drawn to the Court's attention.

3. A Master Docket and a Master File are hereby established for the consolidated proceedings in all of the actions to be coordinated herein and in all other cases filed in, or transferred to this Court and coordinated herewith (hereinafter the "Consolidation Actions"). Entries in said Master Docket shall be applicable to the Coordinated Actions as more fully set forth below. Separate dockets shall also be maintained for each of these Coordinated Actions, and entries shall be made therein in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order.

4. When a pleading is filed and the caption, pursuant to ¶9, infra, shows that it is to be applicable to "All Actions," the Clerk shall file such pleading in the Master File and note such filing in the Master Docket. No further copies need be filed or docket entries made.

5. When a pleading is filed and the caption, pursuant to ¶9, infra, shows that it is to be applicable to fewer than all of these coordinated actions (e.g. to individual actions; actions by TW shareholders who made demands on TW's Board of Directors), the Clerk need file such pleading only in the Master File but nonetheless shall note such filing in both the Master Docket and the docket of each such action.

## NEWLY FILED OR TRANSFERRED ACTIONS

6. When a case which properly belongs as part of Time Warner Shareholder Derivative Litigation is hereafter filed in this Court, or transferred here from another Court and assigned to Judge Kram, the Clerk of this Court shall:

   (a) Place a copy of this Order in the separate file for such action.

   (b) Mail to the attorneys for the plaintiff(s) in the newly-filed or transferred case a copy of this Order and direct that this Order be served upon or mailed to any new defendant(s) in the newly-filed or transferred case, or their counsel.

   (c) Make an appropriate entry in the Master Docket. This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any cases which might properly be coordinated as part of Time Warner Shareholder Derivative Litigation.

7. This Pre-Trial Order No. 2 shall supersede Pre-Trial Order No. 1 and shall apply to each of the shareholder derivative actions presently on file or which shall be subsequently filed in this Court or transferred to this Court which is related to Time Warner Shareholder Derivative Litigation unless a party objecting to the coordination of such case or to any other provision of this Order shall, within 10 days after the date upon which a copy of this Order is mailed to counsel for such party, file an application for relief from this Order or any provision herein. and this Court deems it appropriate to grant such application.

## CAPTION OF CASES

8. Every pleading filed in this action, or in any actions subsequently consolidated herewith shall bear the following caption:

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

TIME WARNER SHAREHOLDER                 Master File No. 02-CV-6302 (SWK)
DERIVATIVE LITIGATION

This Document Relates To:
_____

9. When a pleading is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable only to some, but not all, of such actions, this Court's docket number for each individual action to which the paper is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Related To:" in the caption described "02-CV6302."

## APPOINTMENT OF LIAISON AND LEAD COUNSEL

10. The leadership structure of plaintiffs' conduct of these actions and in any actions subsequently coordinated herewith, shall consist of:

## NO "DEMAND" CASES

Liaison and Lead Counsel in the cases where no demand has been made on TW's Board of Directors pursuant to Rule 23.1, Fed.R.Civ.P as set forth below:

LEE S. SHALOV (LS 7118)
SHALOVE STONE & BONNER
485 Seventh Avenue (Suite 1000)
New York, NY 10018
(212) 239-4340

Plaintiffs' Liaison Counsel
("No Demand" Cases)

JOHN G. EMERSON, JR.
THE EMERSON FIRM
P.O. Box 25336
Little Rock, AR 72221-5336
(501) 907-2555
(501) 907-2556 (fax)

Plaintiffs" Lead Counsel
("No Demand" Cases)

### "DEMAND" CASES

Co-Lead Counsel in the cases where demand(s) have been made on TW's Board of Directors pursuant to Rule 23.1, Fed.R.Civ.P:

MORRIS AND MORRIS LLC
COUNSELORS AT LAW
Karen L. Morris (KM-2814)
1105 N. Market Street, Suite 803
Wilmington, DE 19801
(302) 426-0400
(302) 426-0406 (fax)

GREENFIELD & GOODMAN LLC
Richard D. Greenfield (RG-4046)
24579 Deep Neck Road
Royal Oak, MD 21662
(410) 745-4149
(410) 745-4158 (fax)

Plaintiffs' Co-Lead Counsel
("Demand" Cases)

11.   Plaintiffs' Liaison Counsel in the "No Demand" Cases also shall be available and responsible for communications to and from this Court, including the distribution to counsel of Orders and other directions from the Court. Plaintiffs' Liaison

5

Counsel shall be responsible for the creation and maintenance of a master service list of all parties and their respective counsel.

12. Plaintiffs' Lead Counsel in the respective "Demand" and No Demand" cases shall have authority to speak for plaintiffs in matters regarding pre-trial procedure and settlement negotiations in their respective cases, and shall make all work assignments in such manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort.

13. Plaintiffs' respective Lead Counsel shall be responsible for the coordination of all activities and appearances on behalf of plaintiffs in their respective "Demand" and "No Demand" cases, and for the dissemination of notices and orders of this Court. No motion, request for discovery, or other pre-trial proceedings shall be initiated or filed by any plaintiffs except through plaintiffs' Lead Counsel in the respective "Demand" and "No Demand" cases.

14. Defendants' counsel may rely upon all agreements made with plaintiffs' Lead Counsel in the respective "Demand" and "No Demand" cases (or other duly authorized representatives of the plaintiffs therein), and such agreements shall be binding on the respective plaintiffs.

15. Defendants shall effect service of papers on plaintiffs by serving a copy of same on plaintiffs' Lead Counsel in the respective "Demand" and "No Demand" cases by overnight mail service or hand delivery unless otherwise agreed. Plaintiffs shall effect service of papers on defendants by serving a copy of same on defendants' counsel by overnight mail service or hand delivery, unless otherwise agreed.

## SCHEDULE OF PROCEEDINGS

16. This case is related in some ways with the consolidated securities class actions pending before this Court as "IN RE AOL TIME WARNER, INC., SECURITIES LITIGATION" under No. 02-CV-5575 (SWK).

17. The "No Demand" cases are hereby stayed during the pendency of this Court's ruling in No. 02-CV-5575 (SWK) on any defendants' motion to dismiss the consolidated class action complaint in that action. In the event that the motion to dismiss the consolidated securities class action is denied, the stay of the "No Demand" shareholder derivative action shall be vacated thirty (30) days thereafter. Plaintiffs in the "No Demand" shareholder derivative actions shall then file an Amended Complaint ("Amended Complaint") no later than 75 days from the date of the entry of an order denying defendants' motion to dismiss the consolidated securities class action complaint in No. 02-CV-5575, unless otherwise agreed between the parties, which shall be deemed the operative complaint in the "No Demand" derivative cases, superseding all complaints filed in such cases, or any of the "No Demand" actions to be coordinated hereunder or in any related cases. Defendants shall have 60 days after the filing and service of the Amended Complaint in the "No Demand" cases to answer or otherwise respond thereto. In the event that defendants file any motions directed at the Amended Complaint, counsel are to meet and confer and report to the Court with regard to an acceptable briefing and hearing schedule for such motions.

18. With respect to the "Demand" case or cases, the parties thereto are directed to meet and confer with respect to whether defendants will respond to the

7

Complaint to indicate no reason against the approval or present to the Court some other proposal for further proceedings.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT
JUDGE

Submitted by:

Dated: February 13, 2004

MORRIS AND MORRIS LLC
COUNSELORS AT LAW

_____
Karen L. Morris (KM-2574)
1105 N. Market Street, Suite 803
Wilmington, DE 19801
(302) 426-0400
(302) 426-0406 (fax)

GREENFIELD & GOODMAN LLC

_____
Richard D. Greenfield (RG-1040)
24579 Deep Neck Road
Royal Oak, MD 21662
(410) 745-4149
(410) 745-4158 (fax)

ANN MILLER, LLC
Ann Miller
834 Chestnut Street, Suite 206
Philadelphia, PA 19107
(215) 238-0468
(215) 574-0699 (fax)

Counsel for Plaintiffs Fullerton and Willinger

# EXHIBIT C

ORIGINAL

90155

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     x
IN RE AOL TIME WARNER, INC.          x   MASTER: 02-CV-6302 FILE IN
SHAREHOLDER LITIGATION               x
                                     x
-------------------------------------X
THIS DOCUMENT RELATES TO:            x
-------------------------------------X
                                     x
LAURENCE NATHANSON, Derivatively on  x                    27
Behalf of Nominal Defendant TIME     x
WARNER, INC.,                        x   03 CV 9860 (SWK)
                                     x
                    Plaintiffs,      x
                                     x
          -against-                  x
                                     x
STEPHEN M. CASE, JAMES L. BARKSDALE, x   OPINION AND ORDER
STEPHEN F. BOLLENBACH, FRANK J.      x
CAULFIELD, MILES R. GILBURNE, CARLA A.x
HILLS, REUBEN MARK, MICHAEL A. MILES, x
KENNETH J. NOVACK, RICHARD D. PARSONS,x
ROBERT W. PITTMAN, FRANKLIN D. RAINES,x
R.E. TURNER, FRANCIS T. VINCENT, JR.,x
DANIEL F. AKERSON, GEORGE VRADENBURG,x
MAYO S. STUNTZ AND J. MICHAEL KELLY, x
                                     x
                    Defendants,      x
                                     x
     and                             x
                                     x
TIME WARNER, INC.,                   x
                    Nominal Defendant x
-------------------------------------X
```

**SHIRLEY WOHL KRAM, U.S.D.J.**

Plaintiff Laurence Nathanson moves the Court to modify Unopposed Pre-Trial Order No. 1, entered on March 26, 2003. Specifically, Nathanson asks the Court to appoint the law firm of Shepherd, Finkelman, Miller & Shah, LLC ("SFMS") as co-lead counsel in the "no demand" shareholder derivative cases.



Nathanson's motion is DENIED. The motion presents no objection to the status of these proceedings, nor does it raise any issue regarding the adequacy of Emerson Poynter as Lead Counsel. Instead, Nathanson's counsel seems to argue that, with respect to lead attorneys, "the more the merrier." The Court disagrees, as there is no reason to believe that the appointment of additional lead counsel will maximize the benefits to shareholders in these actions.

While the Court will not appoint SFMS co-lead counsel,[1] the Court does believe that bifurcation of the shareholder derivative claims into "demand" and "no demand" cases, due to the distinct factual and legal issues involved, is appropriate. Accordingly, Pre-Trial Order No. 2, which is attached, will be entered.

SO ORDERED.

                                                            SHIRLEY WOHL KRAM
                                                          UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
             May 26, 2004

---

[1] Nathanson's request for the Court to order Lead Counsel to "assign work" to SFMS is also denied.