## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re ITT Corporation Derivative Litigation** | **Case No. 07 Civ. 2878 (CLB)** |

## ITT CORPORATION'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954
*Attorneys for Nominal Defendant*
*ITT Corporation*

# Table of Contents

**Page**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT .............................................................................................................1

I.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS MADE
     A DEMAND AND THE BOARD APPOINTED A SPECIAL LITIGATION
     COMMITTEE..................................................................................................1

     A.   Plaintiffs Have Conceded That Demand Is Not Futile ...........................1

     B.   The Demand Was Not Refused Or Ignored; The Board Appointed A
          Special Litigation Committee. ...............................................................3

II.  THE CLAIMS AGAINST THE DIRECTORS FAIL BECAUSE THERE WAS NO
     DEMAND .......................................................................................................4

     A.   There Is No Substantial Likelihood Of Liability ...................................4

     B.   Plaintiffs Fail To Allege Any Other Factors That Would Render A
          Majority Of Directors Interested Or Dependent ....................................9

CONCLUSION..........................................................................................................10

## Table of Authorities

### Cases

*Atkins v. Topp Comm. Inc.*, 874 So.2d 626 (Fla. App. 2004) ........................................................ 4

*Biondi v. Scrushy*, 820 A.2d 1148 (Del. Ch. 2003) ........................................................ 4

*Boeing Co. v. Shrontz*, 1992 WL 81228 (Del. Ch. Apr. 20, 1992) ........................................................ 2

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) ........................................................ 5, 9

*Fink v. Komansky*, 2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ........................................................ 5

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ........................................................ 5

*Halpert Enters. Inc. v. Harrison*, 362 F. Supp. 2d 426 (S.D.N.Y. 2005) ........................................................ 7

*In re Abbott Labs. Deriv. Shareholders Litig.*, 325 F.3d 795 (7th Cir. 2003) ........................................................ 8

*In re Boston Scientific Corp. Shareholders Litig.*, 2007 WL 1696995 (S.D.N.Y. June 13, 2007) ........................................................ 4

*In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996) ........................................................ 8

*In re Coca-Cola Enters., Inc. Deriv. Litig.*, 478 F. Supp. 2d 1369 (N.D. Ga. 2007) ........................................................ 10

*In re Guidant Shareholders Deriv. Litig.*, 841 N.E.2d 571 (Ind. 2006) ........................................................ 2, 3

*In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917 (Del. Ch. 2003) ........................................................ 4

*In re Oxford Health Plans, Inc. Sec. Litig.*, 192 F.R.D. 111 (S.D.N.Y. 2000) ........................................................ 9

*In re SFBC Int'l, Inc. Sec. & Deriv. Litig.*, 495 F. Supp. 2d 477 (D.N.J. 2007) ........................................................ 9

*In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267 (S.D.N.Y. 2006) ........................................................ 9

*In re Xethanol Corp. Deriv. Litig.*, 2007 WL 2331975 (S.D.N.Y. Aug. 16, 2007) ........................................................ 6

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ........................................................ 2

*Klein v. FPL Group, Inc.*, 2004 WL 302292 (S.D. Fla. Feb. 5, 2004) ........................................................ 4

*McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001)...................................................... 9

*Pace v. Jordan*, 999 S.W.2d 615 (Tex. App. 1999)................................................. 2

*Risberg v. Aspen Tech., Inc.*, 2008 WL 54815 (D. Mass. Jan. 4, 2008) ..................... 6, 9

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995)............................................... 3

*Spiegel v. Buntrock*, 571 A.2d 767 (Del. 1990) ..................................................... 2, 3

*Stepak v. Addison*, 20 F.3d 398 (11th Cir. 2004) ................................................... 2

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) ............................................................ 5, 7

## Statutes

Ind. Code Ann. § 23-1-32-4 cmt............................................................................ 4

Ind. Code Ann. § 23-1-32-4.................................................................................. 4

Ind. Code Ann. § 23-1-35-1(e)(2).......................................................................... 5

## PRELIMINARY STATEMENT

Plaintiffs admit that they must allege specific facts showing ITT's Directors received obvious warning signs of wrongdoing and made a conscious decision to ignore them. But Plaintiffs do not assert even one fact that suggests the Directors consciously breached their fiduciary duties. Plaintiffs only argue that wrongdoing by a small number of employees (in a global company of 42,000 employees) occurred on the Directors' "watch" over a prolonged period. That is not nearly enough to sustain Plaintiffs' pleading burden.

Plaintiffs also cannot escape the fact they made a demand on ITT's board. By making a demand, Plaintiffs have conceded that demand is not excused as futile. In addition, ITT established a Special Litigation Committee. Under controlling law, Plaintiffs may no longer pursue separate derivative litigation.

Rather than meet their burden to plead specific facts about the Directors, Plaintiffs only present scurrilous personal attacks on the Special Litigation Committee's independent counsel (a former federal prosecutor repeatedly appointed by this District to act as a receiver), irrelevant and offensive references to the "families of our killed and maimed troops who served in Iraq and Afghanistan," unsupported conclusory assertions that the Board "breached its duties," and miscited cases. What Plaintiffs do not do is exactly what they are required to do: plead particularized facts in the complaint that show the Directors face a substantial likelihood of liability for consciously breaching their fiduciary duties.

## ARGUMENT

I.  **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS MADE A DEMAND AND THE BOARD APPOINTED A SPECIAL LITIGATION COMMITTEE**

### A.    Plaintiffs Have Conceded That Demand Is Not Futile

Plaintiffs do not dispute the settled rule that "a shareholder who makes [a] demand may

not later assert that demand was in fact excused as futile." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 103 (1991); *see also Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del. 1990). Since Plaintiff Reale made a demand, his claims must be dismissed.[1]

More importantly, Reale's demand also precludes all the Plaintiffs from arguing that demand would be futile. *Boeing Co. v. Shrontz* is squarely on point: expressly holding that when one shareholder made a demand, a different shareholder could not argue demand futility. 1992 WL 81228, at *5 (Del. Ch. Apr. 20, 1992). Contrary to Plaintiffs' assertion, the *Boeing* court did not "perceive[] the two as acting in concert." Pls. Br. at 11. The issue of coordination between the shareholders was not addressed by the court in any way. More recently, the district court in *Stepak v. Addison*, 20 F.3d 398, 412 (11th Cir. 2004), reached the same result, holding that "Stepak's demand precluded *any* Southern stockholder from prosecuting a demand . . . excused derivative suit based on the claims covered by the Stepak demand letter." (emphasis added) (This part of the decision was affirmed on procedural grounds.)[2]

The Indiana legislature has expressed a "strong[] preference" for board control of litigation asserting corporate claims. *In re Guidant Shareholders Deriv. Litig.*, 841 N.E.2d 571, 575 (Ind. 2006). There is "no logical reason why a board's decision should not bind similarly situated shareholders making identical claims. Judicial economy demands that identical claims, which in actuality belong to the corporation, be simultaneously disposed of by one demand." *Pace v. Jordan*, 999 S.W.2d 615, 621 (Tex. App. 1999). (Plaintiffs ignore *Pace* in their brief.)

---

[1]    Plaintiffs did not object to the Court's consideration of the Elbaum Affidavit exhibits.

[2]    Contrary to Plaintiffs' claim, the complaint and demand letter were effectively simultaneous. Pls. Br. at 11 n.9. Piven filed her initial complaint on April 10, 2007 and served it shortly after Reale mailed his demand letter on April 12. *See* Affidavits of Service, sworn to on April 20, 2007 (filed as Dkt. # 2). Moreover, Plaintiffs' suggestion that the Court somehow find that Plaintiff Piven acted without knowledge of Plaintiff Reale, Pls. Br. at 10-11, is baseless and inappropriate.

Even if some courts, not considering Indiana law, have ruled otherwise, the *Boeing/Pace* rule is more consistent with Indiana policy.

**B.    The Demand Was Not Refused Or Ignored; The Board Appointed A Special Litigation Committee.**

In response to Reale's Demand Letter, the Board appointed a Special Litigation Committee. The Committee is investigating the Company's potential claims against the John Doe Defendants, and any other employees, and will determine what, if any, legal action to take.[3]

Plaintiffs make a number of arguments about the Committee. Plaintiffs initially argue the formation of a committee concedes demand futility. Pls. Br. at 2. Not so:

> a disinterested board of directors does not waive its right to control derivative litigation merely by delegating that control to a special committee. For this Court to find a board of directors conceded the futility of demand, a derivative plaintiff must allege particularized facts that support a factual finding that the board made the concession.

*Seminaris v. Landa*, 662 A.2d 1350, 1352-53 (Del. Ch. 1995); *Spiegel*, 571 A.2d at 776-77; *see also Guidant*, 841 N.E.2d at 575 (once a committee is formed, "there is no need at that point for a court to determine if demand would be futile on traditional grounds").

Plaintiffs suggest that the Committee need not pursue an independent investigation given the record underlying the settlement. Pls. Br. at 16. But the Committee has to satisfy itself as to the underlying facts, even if only by reviewing the underlying record. The Committee should not be faulted for being thorough. Nor did the prior investigations include an analysis of all the facts and circumstances that may be relevant to the Committee's exercise of its business

---

[3]    Plaintiffs misquote *Guidant* to suggest that a shareholder need only wait ninety days after a demand is made before filing suit. Pls. Br. at 11 n.8. The quotation is from a provision of the Revised Model Act that the Indiana legislature *declined* to adopt. *Guidant*, 841 N.E.2d at 574. While expressing concern about the statute of limitations, Plaintiffs have never identified what statute is applicable or when it may have commenced running.

judgment. *See* Ind. Code Ann. § 23-1-32-4 cmt.

Plaintiffs next argue that Committee members Crawford, LeBoeuf and MacInnis are not "disinterested." Pls. Br. at 16-17. This challenge is premature. Courts generally presume independence while the committee conducts its investigation, and, in deference to principles of judicial economy, address any independence concerns when the report is complete. *See Biondi v. Scrushy*, 820 A.2d 1148, 1164 (Del. Ch. 2003) (cited by Plaintiffs). Moreover, as discussed below, the claims against these Directors are far too insubstantial to create a conflict of interest. *See* Ind. Code Ann. § 23-1-32-4.

Finally, Plaintiffs continue their baseless attack on counsel to the Committee. Pls. Br. at 18. The argument that Ms. Brune is too young or greedy for defense work to serve as independent counsel is offensive and paternalistic. It is also frivolous: Ms. Brune is an experienced former prosecutor appointed by Judges of this Court to act as a receiver. Nor is there any authority for the suggestion that only multinational law firms may advise special committees. The Southern District recently upheld a special committee's decision where it was advised by a firm half the size of Ms. Brune's, and also one that specialized in defense matters. *In re Boston Scientific Corp. Shareholders Litig.*, 2007 WL 1696995, at *6 (S.D.N.Y. June 13, 2007); *see* www.janisschuelke.com (Janis Schuelke firm resume).[4]

## II.     THE CLAIMS AGAINST THE DIRECTORS FAIL BECAUSE THERE WAS NO DEMAND

### A.     There Is No Substantial Likelihood Of Liability

Count I of the complaint alleges the Directors failed to oversee the Night Vision unit.

---

[4]     None of the authorities cited by Plaintiffs support their argument. In *Atkins*, the "retired jurist" was serving as the committee conducting the investigation, not counsel for the committee. 874 So.2d 626, 627 (Fla. App. 2004). In *Klein*, counsel to the committee was disqualified because he was personally involved in the matters at issue. 2004 WL 302292, at *10 (S.D. Fla. 2004). *Oracle* did not address the qualification of counsel. 824 A.2d 917, 925 (Del. Ch. 2003).

Plaintiffs concede that to excuse demand on a *Caremark* claim, they must allege with particularity facts showing a conscious decision by the Directors to breach their duties. *See, e.g., Desimone v. Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007); *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) ("imposition of liability requires a showing that the directors *knew* that they were not discharging their fiduciary obligations.") (emphasis added); *see also Guttman v. Huang*, 823 A.2d 492, 506 (Del. Ch. 2003) (plaintiffs must show "the directors were *conscious* of the fact that they were not doing their jobs") (emphasis added) (cited by Plaintiffs).[5]

Plaintiffs' *29*-page memorandum does not point to any relevant citations in the complaint because there are none. Plaintiffs merely argue that the wrongdoing occurred over a long period and therefore the Directors *must have* failed to carry out their duties. This is pure *ipse dixit* and purely illogical. "[C]ourts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." *Desimone*, 924 A.2d at 940; *see also Fink v. Komansky*, 2004 WL 2813166, at *4 (S.D.N.Y. Dec. 8, 2004). (Plaintiffs ignore these decisions.)

Plaintiffs' general allegation that the Company lacked a compliance program is directly refuted by other more specific allegations in the complaint. ITT Br. at 18-19. The complaint alleges that the Night Vision unit had compliance personnel, applied for and obtained export licenses and related approvals, and hired outside counsel to handle a voluntary ITAR disclosure. Compl. ¶¶ 62, 67-69, 71, 76-77, 98. Moreover, in 2004, ITT entered into a Consent Agreement

---

[5]     Indiana law is the same. Under Indiana law, as well as ITT's Articles of Incorporation, the Directors may not be held liable for breach of fiduciary duty unless such breach constituted willful misconduct or recklessness. Ind. Code Ann. § 23-1-35-1(e)(2). Contrary to Plaintiffs' suggestion, Pls. Br. at 20 n.15, courts apply a scienter-based pleading standard to ensure that these protections are not improperly eroded. *See, e.g., Desimone*, 924 A.2d at 935. Separately, Plaintiffs concede that no independent analysis is required with respect to Count II. Pls. Br. at 26 n.17; ITT Br. at 24.

with the State Department that provided for a significant investment in additional compliance programs. Elbaum Aff., Ex. I at 8-12. (Plaintiffs do not respond to these points.)

Plaintiffs do cite paragraphs 40-45 of the complaint in support of their claim that "[t]he CAC alleges with particularity that the Director Defendants failed to exercise good faith in carrying out their duty to prevent" misconduct by employees. Pls. Br. at 7. But this is naked conclusory speculation (*i.e.*, that if the Directors had done *something* more, they would have uncovered employee violations). Plaintiffs ignore the recent Southern District case law rejecting similar boilerplate conclusions, terming such allegations "as a matter of law, insufficient to excuse demand." *In re Xethanol Corp.*, 2007 WL 2331975, at *4 (S.D.N.Y. Aug. 16, 2007); *see also Risberg v. Aspen Tech., Inc.*, 2008 WL 54815, at *8 (D. Mass. Jan. 4, 2008).

Plaintiffs allege the following "red flags": "the Company was aware by, at the latest, 2000 that it violated the ITAR; by 2001 it knew it was under investigation by the government; by 2004 it had entered into a consent decree with the government; yet as of 2006 it continued its criminal conduct." Pls. Br. at 22; *see also id.* at 21. None of these allegations establish that the Directors consciously disregarded their duties. There are no well plead facts supporting the claim that the Directors failed to discuss the government investigations during Board meetings. Pls. Br. at 4, 24.[6] Indeed there are no facts plead at all as to what the Directors actually did or did not do.

- *First*, the complaint does not allege what information the Board received. This crucial link to the Directors is missing. The statement that "the Company was aware" is not enough.

- *Second*, in response to the government investigations, the Company entered into a Consent Agreement with the State Department in 2004. Compl. ¶ 64. The

---

[6]     Plaintiffs do not dispute that courts routinely criticize shareholder plaintiffs for failing to use the available investigatory tools before filing a complaint or that, at this stage, they may not seek corporate records to aid in drafting an amended derivative complaint. *See* ITT Br. at 10 n.6.

Company agreed to spend $5 million on export compliance over a five-year period to implement specific compliance measures including, among other things, the designation of an ITT official for compliance and oversight, improved compliance training for ITT Night Vision employees, additional legal department oversight, and a compliance audit process. Elbaum Aff., Ex. I at 3 & 8-12. These remedial measures were approved by the State Department, the federal agency with ITAR enforcement jurisdiction, and therefore cannot possibly constitute a knowing breach of fiduciary duty by the Directors. Rather, these undisputed oversight actions demonstrate the Directors' good faith. To the extent the investigations constitute red flags, there can be no claim that the Directors consciously ignored them.

- *Third*, while Plaintiffs identify isolated improper activities by certain employees that continued until early 2006, the Directors cannot be held personally liable for this misconduct. Plaintiffs do not identify any red flags received by the Directors after 2004 that indicate the remedial measures approved by the State Department were insufficient or that any misconduct by employees was continuing. Nor do Plaintiffs allege with particularity "what additional measures the directors should have taken" beyond those in the 2004 Consent Agreement. *Halpert Enters. Inc. v. Harrison*, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005).

Plaintiffs also resort to more than one misrepresentation. The Night Vision unit is a small piece of a very large conglomerate; outside Directors are not charged with knowledge of the supply process for every business unit of a large company. ITT Br. at 3-5, 22-23. Plaintiffs' claim that the Night Vision unit "was a segment of ITT Defense that generated over 80% of ITT's sales and revenues" is false. Pls. Br. at 4; *see* Elbaum Aff, Ex. A at 4. ITT Defense was one of four segments within ITT, and ITT Defense was further subdivided into five business divisions. *Id.* at 3-4. The same document cited by Plaintiffs shows that, when the five units of ITT Defense are aggregated, all U.S. government contracts (for products ranging from communications systems and airborne electronic warfare systems to air traffic control systems and night vision goggles) comprised approximately 80% of ITT Defense's revenues. *Id.* at 4-5. The Night Vision unit generated only 4.2% of ITT's total revenues. *Id.* at 5; *see Stone*, 911 A.2d at 368 (outside directors are not required "to possess detailed information about all aspects of the

7

operation of the enterprise") (quoting *Caremark*, 698 A.2d 959, 971 (Del. Ch. 1996)).[7]

Finally, while Plaintiffs repeatedly state that the Plea Agreement subjected the Company to "fines and penalties totaling $100 million," Pls. Br. at 1, that statement is inflated. The Plea Agreement provided for $50 million in fines, forfeitures and penalties. The additional $50 million consists of an investment over five years in research and development, not a payment to the government. Elbaum Aff., Ex. E at 2. Plaintiffs also have no response to the recent holding of the Delaware courts that "the size of any financial loss is not a sufficient basis on which to rest liability." *David B. Shaev Profit Sharing Account v. Armstrong*, 2006 WL 391931, at *6 (Del. Ch. Feb. 13, 2006), *aff'd on opinion below*, 911 A.2d 802 (Del. 2006).[8]

Plaintiffs' use of case law is equally inaccurate. In *Abbott Laboratories*, the complaint pleads particularized facts revealing an extensive array of specific red flags and failures by the directors. The plaintiffs alleged that the FDA conducted 13 extended site inspections over a six-year period and issued numerous informal notices of noncompliance, the FDA sent four formal warning letters to the company, and the *Wall Street Journal* published an extensive article about FDA compliance problems at the company. 325 F.3d 795, 799, 808-09 (7th Cir. 2003). In *McCall v. Scott*, the complaint alleged the company systematically applied improper accounting practices at its facilities nationwide, identified specific audit reports to the board of the improper conduct by senior management, identified allegations of misconduct brought in a *qui tam* action

---

[7]    Plaintiffs also overstate the impact of the plea agreement on ITT's business. Pls. Br. at 21. While ITT was debarred from certain future Night Vision export licenses, this restricted only 5% of its night vision sales (a minuscule percentage of the Company's total revenues), and ITT can apply for reinstatement after one year. Elbaum Aff., Ex. E at 2.

[8]    Contrary to Plaintiffs' suggestion, Pls. Br. at 2, both the Consent Agreement and the Deferred Prosecution Agreement noted that ITT had cooperated with the government investigations. Elbaum Aff., Ex. H at 2, Ex. I at 3. Plaintiffs also repeatedly quote an alleged statement by a government investigator that "the problem we encountered was in the culture— the willful self blinding of company *officials*." Pls. Br. at 5, 22, 25 (citing Compl. ¶ 46; emphasis added). This conclusion does not supply facts concerning the Directors.

against the company, and described an investigation by the *New York Times* regarding the

company's billing practices. 239 F.3d 808, 819-20 (6th Cir. 2001).[9] In *Oxford*, this Court found

demand was excused because the complaint alleged specific *facts* showing the directors *knew*

that management was issuing false financial disclosures and *intentionally* took no steps to correct

the misrepresentations or the underlying accounting problems; two directors sold stock while in

the possession of this non-public information; and the Court had previously sustained a related

securities fraud complaint against the same defendants based on the same allegations. 192

F.R.D. 111, 115 (S.D.N.Y. 2000).[10] *See Risberg*, 2008 WL 54815, at *8 (distinguishing *Abbott*

*Labs* and *Oxford*).

**B.  Plaintiffs Fail To Allege Any Other Factors That Would Render A Majority Of Directors Interested Or Dependent**

Plaintiffs do not dispute that the Indiana Supreme Court, the Southern District and

numerous other courts have consistently held that demand is not excused simply because the

Directors would have to sue themselves. ITT Br. at 23-24. Nonetheless, Plaintiffs persist in

arguing that the Directors cannot evaluate a demand because a criminal investigation is

continuing. Pls. Br. at 26-27. But the complaint does not—and cannot—allege that any director

---

[9]     The *McCall* court also held that demand could be excused based on allegations of gross negligence. 239 F.3d at 818. Delaware courts subsequently clarified that plaintiffs must satisfy a higher, scienter-based standard. *See, e.g., Desimone*, 924 A.2d at 935.

[10]    *Veeco* and *SFBC* involved far smaller companies where the misconduct implicated core services and products. In *Veeco*, the audit committee received a report identifying export violations and export sales constituted 70% of the company's revenues. 434 F. Supp. 2d 267, 277-78 (S.D.N.Y. 2006). Unlike this case, the company in *Veeco* did not adopt remedial measures pursuant to a public consent agreement with the State Department. In *SFBC*, the complaint alleged a pattern of improper activities at the company's largest medical testing facility, located at the same site as the company's headquarters, together with numerous failed inspection citations sent to the company by the FDA and the Miami building department, all without any director response. The SFBC court distinguished cases, like this one, where the complaint was based on "merely decentralized activity by employees of a far-flung enterprise of the company." 495 F. Supp. 2d 477, 485-86 (D.N.J. 2007).

was ever a subject of any criminal investigation.

Plaintiffs also argue that seven of ITT's outside Directors serve on the Audit and

Corporate Responsibility Committees, which they claim "raise[s] a substantial likelihood of their

liability." Pls. Br. at 27.  Courts repeatedly reject this conclusory assertion:

> Courts applying Delaware case law have consistently held . . . that
> a director is not interested merely by virtue of sitting on an Audit
> Committee while the corporation faces accounting and audit
> irregularities. . . .  [T]he Plaintiff must provide particularized
> allegations showing the information that the Audit Committee saw
> and upon which it failed to act.

*In re Coca-Cola Enters., Inc. Deriv. Litig.*, 478 F. Supp. 2d 1369, 1378 (N.D. Ga. 2007).

Plaintiffs simply ignore all the cases that reject their theory.  ITT Br. at 21 & n.12.[11]

## CONCLUSION

For the reasons set forth above and in ITT's opening brief, ITT respectfully requests that

the Court enter an order dismissing the consolidated amended complaint with prejudice.

Dated: January 9, 2008  
New York, New York

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

Paul C. Curnin (pcurnin@stblaw.com)  
David Elbaum (delbaum@stblaw.com)  
Marisa L. Sarig (msarig@stblaw.com)  
425 Lexington Avenue  
New York, New York 10017-3954  
Tel: (212) 455-2000  
Fax: (212) 455-2502  
*Attorneys for Nominal Defendant ITT Corporation*

---

[11]    While Plaintiffs have not established that Loranger is interested, the Court need not address the issue since eight of the nine Directors are outside directors and clearly disinterested. ITT moved to dismiss the claims against the John Doe Defendants on the ground that "Plaintiffs do not allege any facts suggesting that the proposed corporate claims against non-director employees and an outside law firm could create a substantial likelihood of liability for the directors." ITT Br. at 25.  Plaintiffs did not respond.  Instead, Plaintiffs argue that ITT has remained "neutral" with respect to these claims.  Pls. Br. at 28.  Not true.  ITT has moved to dismiss this action.