UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re ITT Corporation Derivative Litigation | Case No. 07 Civ. 2878 (CLB) <br><br> **ORAL ARGUMENT REQUESTED** |

**ITT CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR,
IN THE ALTERNATIVE, CLARIFICATION OF THE COURT'S
MEMORANDUM AND ORDER DATED APRIL 10, 2008**

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954
*Attorneys for Nominal Defendant
ITT Corporation*

## PRELIMINARY STATEMENT

ITT respectfully submits that the Court should reconsider its April 10, 2008 Memorandum and Order denying ITT's motion to dismiss because "the Court overlooked controlling decisions [and] factual matters that might materially have influenced its prior decision." *Boyle v. Stephens, Inc.*, No. 97 Civ. 1351 (SAS), 1998 WL 80175, at *1 (quotations omitted), *aff'd*, 21 F. App'x 76 (2d Cir. 2001); *see also Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); S.D. & E.D. N.Y. Local Rule 6.3.

*First*, the Court overlooked the controlling legal standards. The governing Indiana statute, applicable decisions of the Delaware Supreme Court, and ITT's Articles of Incorporation all require Plaintiffs to allege specific facts showing that a majority of the directors face a substantial likelihood of personal liability for consciously disregarding their fiduciary obligations. The allegations must establish—on a director-by-director basis—that the directors are interested in the outcome of the claims. The Court's decision did not analyze or find, as required, that the Complaint's allegations regarding the individual directors satisfied this heightened standard. Nor could it, as the Complaint and the Company's 2007 plea agreement simply do not allege any such facts. Rather, the Court found demand was excused based on inferences about the actions of unidentified individuals at an undefined "high level" within the Company. The Court's failure to apply the correct standard and undertake the required director-by-director analysis led to the clearly erroneous decision to excuse demand. Similarly, the Court misunderstood ITT's arguments, stating incorrectly that ITT had relied upon the *Oxford* case in support of its motion. In fact, Plaintiffs cited *Oxford*, and ITT demonstrated that *Oxford* is inapplicable to this case.

*Second*, the Court overlooked several key factual matters in the record. Most significantly, the Court's statement that ITT "considered and rejected voluntary disclosure to the Government in 2000" is clearly erroneous. The Complaint and the plea agreement both state that ITT's Night Vision unit hired outside counsel and made a voluntary disclosure of an ITAR violation to the State Department in April and May 2000. The Court also incorrectly stated that the plea agreement conceded there was willful misconduct "at a high level" within the Company. Neither the plea agreement nor the Complaint identifies any misconduct by senior corporate management, let alone the directors. Further, the Court overlooked the extensive remedial actions undertaken by the Company pursuant to a 2004 Consent Agreement with the State Department. The State Department has enforcement jurisdiction over ITAR matters and accepted these compliance programs as sufficient. Certainly compliance programs approved by the State Department cannot possibly constitute a knowing breach of fiduciary duty by the directors.

In the alternative, even if the Court declines to reconsider the denial of the motion to dismiss, ITT respectfully requests that the Court clarify its decision. The April 10 Order does not define the legal elements of Plaintiffs' claims. Rather, the Court uses vague language that could be read as expanding the potential scope of directors' liability well beyond the parameters of controlling law and ITT's Articles of Incorporation. These statements should be corrected before the case proceeds.

2

**ARGUMENT**

**I.    The Court Overlooked Controlling Law**

Plaintiffs assert that the directors breached their fiduciary duties by failing to adequately supervise ITT's Night Vision business unit. Compl. ¶ 41. In holding that demand on the Board of Directors was excused, the Court overlooked controlling legal standards established by the Indiana legislature, ITT's Articles of Incorporation and the Delaware Supreme Court.

The Indiana Business Corporations Law provides that directors may not be held liable for breach of fiduciary duty unless "the breach or failure to perform constitutes willful misconduct or recklessness." IND. CODE ANN. § 23-1-35-1(e)(2); *see also G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 238 (Ind. 2001). ITT's shareholders adopted these limitations on director liability in the Company's Articles of Incorporation. Affidavit of David Elbaum, dated Nov. 30, 2007, ("Elbaum Aff."), Ex. N at Art. 6th (ITT Corp. 10-Q, filed Aug. 7, 2006, Ex.-3.A). The Parties agree that in resolving breach of fiduciary cases, the Indiana courts rely on Delaware decisions. *See* Pls. 12/28/07 Mem. at 5 & n.5 (citing *G&N Aircraft*, 743 N.E.2d at 238).[1]

The Delaware Supreme Court has held that to excuse demand in a failure to supervise case, the Plaintiffs must allege with particularity *facts* showing that a majority of the *directors* face a *"substantial likelihood of liability"* for a *"conscious disregard"* of their fiduciary responsibilities. *Stone v. Ritter*, 911 A.2d 362, at 367, 370 (Del. 2006) (emphasis added) (citing *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993), and *In Re Walt Disney Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006)). The Complaint must show "that the *directors knew* that they were not discharging their fiduciary obligations." *Id.* at 370 (emphasis added) (adopting standard in *In re*

---

[1]    Plaintiffs also cited several of the same Delaware decisions relied on by ITT and cited in this motion for reconsideration. *See* Pls. 12/28/07 Mem. at 3-4, 20-21 (citing *Stone v. Ritter*, 911 A.2d 362 (Del. 2006); *Rales v. Blasband*, 634 A.2d 927 (Del. 1993); *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996)).

*Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996)); *accord David B. Shaev Profit Sharing Account v. Armstrong*, 911 A.2d 802 (Del. 2006) ("*Shaev*"), *affirming on opinion below*, 2006 WL 391931 (Del. Ch. Feb. 13, 2006); *Desimone v. Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007). This is a *scienter*-based standard, and it is mandated by the governing Indiana statute, the Company's Articles of Incorporation, and Delaware Supreme Court precedent. *See Stone*, 911 A.2d at 367 (finding limitation of liability in the articles of incorporation is "critical" to the demand futility analysis). Significantly, the Court must analyze whether plaintiffs have satisfied their heightened pleading burden on *a director-by-director basis. See Rales*, 634 A.2d at 936-37 (conducting director-by-director analysis); *Ferre v. McGrath*, 2007 WL 1180650, at *4 (S.D.N.Y. Feb. 16, 2007) (same); *see also Stone*, 911 A.2d at 367 n.9 ("Allegations of demand futility under Rule 23.1 'must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by ... Rule 8(a).'") (quoting *Brehm v. Eisner*, 746 A.2d 244, 254 (2000)). Unless the Complaint alleges sufficient facts specifically about the directors, under Indiana law "the decision whether and to what extent to investigate and prosecute corporate claims" must remain "subject to the judgment and control of the board." *In re Guidant Shareholders Deriv. Litig.*, 841 N.E.2d 571, 575 (Ind. 2006) (citing IND. CODE ANN. § 23-1-32-4 cmt.).

The Court overlooked all of these controlling legal standards in its April 10 decision. The Court did not require Plaintiffs to allege specific *facts* showing that the *directors* faced a *substantial likelihood* of personal liability for *consciously disregarding* their fiduciary duties. In fact, the decision only mentions the directors in passing. Nor does the Complaint allege any facts whatsoever about what any individual director actually did or did not do.

Rather than apply the controlling law, the Court found that "[t]here appears at least sufficient evidence of conscious avoidance at high levels to prevent dismissal of the claims prior to completion of pre-trial discovery." April 10 Order at 2. This generalized inference of misconduct by unidentified individuals at some undefined "high levels" of the Company says absolutely nothing about any *director*. This missing link to the directors is precisely what must be alleged, with factual particularity, to satisfy the controlling pleading standards. Indeed, "courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." *Desimone*, 924 A.2d at 940. Where, as here, the Complaint does not allege any specific facts about the directors, there is no basis to excuse the demand requirement, and the case must be dismissed. *See Stone*, 911 A.2d at 367, 370.

Similarly, the Court's statement that "[w]illfulness at a fairly high level is conceded in the plea agreement" does not even address, let alone satisfy, the heightened pleading standards for excusing demand. April 10 Order at 2. Moreover, the statement is not supported by the allegations in the Complaint. The plea agreement did not concede anything even about ITT's senior corporate management, much less the directors.[2]

Further, the Court's statement that ITT relied on the *Oxford* decision "to support the motion" is clearly erroneous. April 10 Order at 2. ITT did *not* cite *Oxford* in support of its motion. Plaintiffs cited *Oxford*, and in response, ITT argued that *Oxford* was inapposite. ITT 1/9/08 Reply Mem. at 8-9. ITT also cited *Risberg v. Aspen Technologies, Inc.*, 2008 WL 54815 (D. Mass. Jan. 4, 2008), a recent decision that distinguished *Oxford* on grounds that are equally

---

[2]    In addition, the monetary penalty imposed under the plea agreement and cited by the Court is not sufficient to excuse demand, as the Delaware courts have clearly held that "the size of any financial loss is not a sufficient basis on which to rest liability." *Shaev*, 2006 WL 391931, at *3, *aff'd on opinion below*, 911 A.2d 802 (Del. 2006).

applicable here. *Id.* at 9.  Similarly, during oral argument, ITT highlighted the numerous additional allegations in the *Oxford* case that led the Court to excuse demand and that are *not* present in this case.  Jan. 25, 2008 Tr. at 5.  Indeed, the Court appears to have agreed with ITT that the *Oxford* complaint is not "analogous" to the Complaint here.  April 10 Order at 2.

The Court applied an incorrect legal standard, overlooking controlling law.  The Court did not, and cannot, find that a majority of the directors (eight of whom are independent, outside directors) face a *substantial likelihood* of personal liability for conduct that meets the *scienter*-based standards of *Stone* and the Indiana statute.  If the Court had applied the correct standard, it would have reached a different result and dismissed the Complaint.  Accordingly, reconsideration is appropriate.

## II.    The Court Overlooked Material Facts

The Court also overlooked numerous facts that are critical to the correct determination of ITT's motion to dismiss.  The Court appears to have misunderstood the essential chronology of events and the scope of the Company's plea agreement.[3]

The Court's statement that "top management had considered and rejected voluntary disclosure to the Government in 2000" is simply incorrect.  There is no dispute that ITT's Night Vision unit hired outside counsel and in April and May 2000 *submitted a voluntary disclosure* to the State Department stating that it had violated the terms of certain licenses for the temporary export of night vision products to foreign persons, albeit the disclosure turned out to be incomplete.  These facts are set forth in both the plea agreement and the Complaint.  *See* Elbaum Aff., Ex. H, App'x A, at 3-5; Compl. ¶ 62.  There is nothing in the Complaint that links the

---

[3]    The documents attached to the Elbaum Affidavit are all publicly available and many were also cited in the Complaint.  Plaintiffs did not object to the Court's consideration of any of them on the motion to dismiss and, accordingly, they are properly before the Court on this motion for reconsideration.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

directors to either the underlying transfer of the night vision products, the inadequate record-keeping that led to the violation of the temporary licenses, or any inadequacies in the voluntary disclosure letters.

In addition, the Court overlooked the fact that ITT entered into a Consent Agreement with the State Department in 2004. Elbaum Aff., Ex. I; Compl. ¶ 64. This Consent Agreement demonstrates that the directors undertook reasonable, good faith oversight actions in response to the government investigations. In the Consent Agreement, the Company agreed to spend $5 million on export compliance over a five-year period to implement specific compliance measures including, among other things, the designation of an ITT official for compliance and oversight, improved compliance training for ITT Night Vision employees, additional legal department oversight, and a compliance audit process. Elbaum Aff., Ex. I at 3 & 8-12. These remedial measures were approved by the State Department, the federal agency with ITAR enforcement jurisdiction, and therefore demonstrate the directors' good faith. Indeed, Plaintiffs have never said "what additional measures the directors should have taken" beyond those approved by the State Department in the Consent Agreement. *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005) (citation omitted).

The Court's statement that "willfulness at a fairly high level is conceded in the plea agreement" also is incorrect and overlooks key facts. April 10 Order at 2. The plea agreement did not acknowledge any misconduct at the level of senior corporate management, let alone any inappropriate actions by the directors. Further, the Court overlooked the undisputed size and scope of ITT's global operations and the existence of ITAR compliance programs in the Night Vision unit at all times. During the relevant time period, ITT was a diversified company with global operations and 42,000 employees. ITT developed, manufactured and sold thousands of

products and services in a broad array of markets. The Night Vision unit was one of 15 separate business units generating only 4.2% of the Company's total revenues. And, the Complaint itself alleges that the Night Vision unit had ITAR compliance personnel, applied for and obtained ITAR export licenses and related approvals, and hired outside counsel to handle a voluntary ITAR disclosure. Compl. ¶¶ 62, 67-69, 71, 76-77, 98.

Finally, the Court's statement that "other parties in interest have made a demand and the Officers and Directors have not sought recovery" overlooks the fact that the Company established a Special Litigation Committee to investigate the Company's potential claims. The Indiana Supreme Court has held that once a corporation establishes such a committee "demand futility is no longer an issue." *In re Guidant Shareholders Deriv. Litig.*, 841 N.E.2d 571, 575 (Ind. 2006) (citing IND. CODE ANN. § 23-1-32-4 cmt (c)). The decision whether or not to assert claims is within the Committee's business judgment as to the best interests of the Company; the Committee is not required to assert claims simply because a demand was made. *Id.* Neither the Committee nor the Company has refused the demand.

The Complaint fails to allege any facts regarding any supposed action, or inappropriate inaction, taken by the directors themselves at any time. Nothing in the Complaint reflects a "conscious disregard" by the directors of their fiduciary duties. *Stone*, 911 A.2d at 370.

### III.    In the Alternative, The Court Should Clarify The April 10 Order

While the Court should reconsider the April 10 Order and dismiss the Complaint, if the Court declines to do so, it should clarify its decision to correct the legal and factual errors and prevent any unjust prejudice at later stages of the case. The April 10 Order does not properly define the legal requirements for excusing demand in a derivative action. Several of the Court's statements are so vague and overly broad that they could cause substantial injustice if they are

lifted out of context and deemed to constitute the law of the case. Accordingly, the Court should:

- Define the applicable legal standards on the motion to dismiss through citations to IND. CODE ANN. § 23-1-35-1(e) and *Stone v. Ritter*, 911 A.2d 362 (Del. 2006);

- Delete the following two statements that are clearly erroneous: (1) "willfulness at a fairly high level is conceded in the plea agreement," and (2) "top management had considered and rejected voluntary disclosure to the Government in 2000"; and

- Delete the statement that allegations of "conscious avoidance at high levels" are sufficient to excuse demand, which is inconsistent with the controlling legal standards discussed above.

## CONCLUSION

For the reasons set forth above, ITT respectfully requests that the Court reconsider its April 10 Order and, on reconsideration, enter an order dismissing the consolidated amended complaint with prejudice.

Dated: April 24, 2008          Respectfully submitted,
       New York, New York

                               SIMPSON THACHER & BARTLETT LLP

                               _____
                               Paul C. Curnin (pcurnin@stblaw.com)
                               David Elbaum (delbaum@stblaw.com)
                               Marisa L. Sarig (msarig@stblaw.com)
                               425 Lexington Avenue
                               New York, New York 10017-3954
                               Tel: (212) 455-2000
                               Fax: (212) 455-2502

                               *Attorneys for Nominal Defendant ITT Corporation*

9