UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re ITT Corporation Derivative Litigation

07-CV-2878 (CS)

**MEMORANDUM DECISION
AND ORDER**

------------------------------------------------------------------x

<u>Appearances</u>:

Robert I. Harwood, Esq.
Samuel K. Rosen, Esq.
Harwood Feffer LLP
New York, New York
*Chairman, Plaintiffs' Executive Committee*

Judith Spanier, Esq.
Orin Kurtz, Esq.
Abbey Spanier Rodd & Abrams, LLP
New York, New York

Laurence D. Paskowitz, Esq.
Paskowitz & Associates
New York, New York

James E. Tullman, Esq.
Weiss & Lurie
New York, New York
*Counsel for Plaintiff*s

Paul C. Curnin, Esq.
David Elbaum, Esq.
Marisa L. Sarig, Esq.
Simpson Thacher & Bartlett LLP
New York, New York
*Counsel for Nominal Defendant ITT Corporation*

-1-

Seibel, J.

Before the Court is Nominal Defendant ITT Corporation's Motion for Reconsideration (Doc. 27) filed on April 24, 2008.

**I. Background**

*Piven v. Loranger*, 07-CV-2878 ("*Piven*"), a stockholder derivative action, was originally filed on April 10, 2007.  It was consolidated with two similar actions – *Levy v. Loranger*, 07-CV-6339 ("*Levy*") and *Reale v. Loranger*, 07-CV-7358 ("*Reale*") – pursuant to a stipulation entered into by all the Parties.[1]  The Stipulation provided that the cases are consolidated for all purposes, that Plaintiffs would file a consolidated amended complaint or designate one of the filed complaints as the operative complaint, and that Defendants were not required to respond to any of the three original complaints.  (Doc. 6.)  Plaintiffs filed a Verified Consolidated Amended Complaint ("Complaint") on November 13, 2007.  (Doc. 13.)

Plaintiffs bring this derivative action on behalf and for the benefit of Nominal Defendant ITT Corporation ("ITT") against the ITT Board of Directors ("Board," "Directors" or "Director Defendants") for breach of their fiduciary duties and other violations of law.[2]  (Compl. ¶ 1.)  The case arises out of a criminal proceeding in which ITT pleaded guilty to federal felonies involving: 1) the willful export of defense articles, including night-vision equipment, without a license; and 2) the willful omission of statements of material fact in required arms export reports. (*Id.*)  ITT agreed to pay over $100 million in criminal fines, penalties and forfeitures, and

---

[1]  Plaintiff Levy was subsequently dropped from and is no longer a party to this case.

[2]  Plaintiffs also name as Defendants certain employees of and lawyers for ITT; they are denominated as John Does in the Complaint.

subjected itself to a deferred prosecution agreement.  (*Id.*)  Plaintiffs assert claims against the Director Defendants for breach of fiduciary duty and gross mismanagement.  (*Id.* ¶¶ 137-49.)

Fed. R. Civ. P. 23.1 provides that a plaintiff bringing a derivative action must allege with particularity his or her efforts to obtain the desired action from the corporation's board of directors, or explain why such efforts were not made.  In this case, Plaintiffs plead alternatively that the Board refused demand and that demand was excused because any efforts to obtain the desired action from the Board would have been futile.  (*Id.* ¶ 37.)  They allege that Plaintiff Reale demanded by letter dated April 12, 2007, that the Board commence a legal action, and that in the four months between the demand letter and the commencement of Plaintiff Reale's derivative suit, ITT took no action with respect to the demand.  (*Id.* ¶ 38.)  Plaintiffs further allege that Plaintiff Piven (now Plaintiff Wilkinson, *see* note 2 below) did not make demand on ITT because doing so would have been futile.  (*Id.* ¶ 39.)  Demand on the Board would have been futile, they assert, because each Director participated in the alleged wrongdoing or otherwise breached his or her oversight duties, and bringing this action directly would, in effect, require the Directors to sue themselves for conduct for which insurance would not indemnify them.  (*Id.* ¶¶ 40-51.)

Nominal Defendant ITT filed a motion to dismiss pursuant to Fed. R. Civ. P. 23.1 on November 30, 2007.  (Doc. 15.)  ITT argued that the action should be dismissed because, after Plaintiff Reale made a demand on the Board, the Board created a Special Litigation Committee ("SLC"), which hired outside counsel to investigate the circumstances that formed the basis of the demand.  ITT contended that by making demand, Plaintiffs as a matter of law conceded that the Board could independently evaluate a demand, and that, once a Special Litigation Committee

has been established to investigate claims with the assistance of independent outside counsel, separate derivative litigation may not be pursued.  In addition, Defendant ITT contended that demand was not excused because Plaintiffs failed to allege particularized facts creating a reasonable doubt as to each director's ability to properly exercise his or her business judgment in considering a demand.  It argued that generalized claims of misconduct on the part of the Directors as a whole, without director-by-director analysis, does not satisfy the pleading standards for demand futility.[3]

The motion was originally decided on April 10, 2008.  (Doc. 26.)  In determining whether to revisit it, this Court must apply the "strict" standard governing motions for reconsideration pursuant to S.D.N.Y. Local Civil Rule 6.3.  *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995).  "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Rafter v. Liddle*, No. 07-CV-2282, 2008 U.S. App. LEXIS 17470, at *2 (2d Cir. Aug. 13, 2008) (citing *Shrader*, 70 F.3d at 257) (internal quotation marks omitted); *see* S.D.N.Y. Local Civ. R. 6.3.  The overlooked

---

[3]  On June 6, 2008, the Director Defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  (Doc. 31.)  The Director Defendants argued that the action, which was based on diversity of citizenship, *see* 28 U.S.C. § 1332, should be dismissed because Plaintiff Piven is a resident of Maryland and Defendants recently discovered that Defendant Hamre is and has been since the commencement of this action also a resident of Maryland, rather than a resident of the District of Columbia as previously believed.  On October 24, 2008, this Court granted the motion to dismiss, finding that it lacked subject matter jurisdiction over the Complaint, but permitted Plaintiffs to amend the Complaint,  for the sole purpose of curing the jurisdictional defect, by dismissing one of the non-diverse and dispensable parties–either Plaintiff Piven or Defendant Hamre.  The Court also ordered the consolidation of *Wilkinson v. Loranger*, 08-CV-06318 ("*Wilkinson*"), a similar derivative action, with this case.  Robert Wilkinson, like Plaintiff Piven, did not make a demand on the Board before commencing a derivative action on the basis that such a demand would have been futile.  On October 28, 2008, Plaintiffs amended their Complaint by dropping Plaintiff Piven as a party and adding Plaintiff Wilkinson.  (Doc. 37)  The lack of diversity has thus been cured.

matters must be such that they "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.  Motions for reconsideration "are not vehicles for taking a second bite at the apple." *Rafter*, 2008 U.S. App. LEXIS 17470, at *2 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)) (internal quotation marks omitted).

The Parties are in agreement that the legal standard set forth in *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993), controls the issue of demand futility.  Under that standard, the relevant inquiry is "whether or not the particularized factual allegations . . . create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  (Defs.' Mem. Law in Supp. Mot. Dismiss 14; Pls.' Opp'n 19-20.)  The motion should have been determined under that standard, which – as discussed further below – in turn requires an examination of whether a majority of the directors face a substantial likelihood of personal liability for disregarding their fiduciary obligations.  In this case, that examination requires an analysis of the Directors' implementation of reporting or information systems and/or the individual Directors' knowledge of and response to misconduct at ITT.  Accordingly, the motion for reconsideration is granted.  *See, e.g., J.G. Peta, Inc. v. Club Prot., Inc.*, No. 99-CV-616, 2001 U.S. Dist. LEXIS 1676, at *4, *8 (N.D.N.Y Jan. 24, 2001) (granting motion for reconsideration where court inadvertently failed to apply correct legal standard).

## II.  Discussion

Before the Court is Defendant ITT's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 23.1(b) (Doc. 15), filed on November 30, 2007.  For the following reasons, the Motion

is granted to the extent the Complaint relies on demand futility, although Plaintiffs may attempt to cure the defects in the Complaint by amendment.

### A.  Legal Standards

Fed. R. Civ. P. 23.1(b) requires a plaintiff bringing a derivative action to, among other things, "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."  This Federal Rule is the procedural embodiment of the substantive principle of corporate law that directors are empowered to direct the management of the business and affairs of the corporation.  *See Rales*, 634 A.2d at 932.  Pursuant to Rule 23.1, derivative plaintiffs must plead specific factual allegations showing that demand is excused.  Well-pleaded allegations are accepted as true, *Halpert Enters. v. Harrison*, 362 F. Supp. 2d 426, 430 (S.D.N.Y. 2005), and all reasonable inferences that flow logically from particularized facts alleged should be drawn in the plaintiff's favor, *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008).  Conclusory allegations, however, are not considered.  *Halpert Enters.*, 362 F. Supp. 2d at 429-30.

Fed. R. Civ. P. 23.1 is a pleading rule that "creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question."  *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991).  The adequacy of those efforts, however, is determined by state law.  *Id.*  The substantive law on demand is the law of the state of incorporation.  *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108-09 (1991).  Because ITT is an Indiana corporation, Indiana law dictates under what circumstances demand is excused.  Indiana courts, in turn, look to Delaware law when considering cases involving alleged

breaches of fiduciary duties.  *See, e.g.*, *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 238 (Ind. 2001) (citing Delaware precedent for principles of corporate law).

The standard for determining demand futility in the absence of a director decision is set forth in *Rales*, 634 A.2d at 934.  To excuse demand pursuant to *Rales*, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  *Id.*  A director will be deemed interested and incapable of exercising "his or her independent business judgment without being influenced by adverse personal consequences" when a "corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders."  *Id.* at 936.  That "demand on the board would be tantamount to asking the directors to sue themselves," and the "allegation that the Defendants' directors' and officers' liability policies have an . . . exclusion that precludes coverage . . .," are "insufficient to create a reasonable doubt as to disinterestedness."  *Kerneghan v. Franklin*, No. 06-CV-1533, 2008 WL 4450268, at *7 (S.D.N.Y. Sept. 29, 2008).  A director must face more than "a mere threat" of personal liability to be considered interested and incapable of exercising his or her business judgment in considering a demand.  *Rales*, 634 A.2d at 936 (internal quotation marks omitted).  To be deemed interested, a director must face "a substantial likelihood" of personal liability.  *Id.* (internal quotation marks omitted).

Claims for breach of fiduciary duty premised on director oversight are analyzed according to the standards set forth in *In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996).  This theory of director liability is "possibly the most difficult

theory in corporation law upon which a plaintiff might hope to win a judgment." *Id.* at 967.  The "necessary conditions predicate for director oversight liability" are: (1) "the directors utterly failed to implement any reporting or information system or controls;" or (2) "having implemented such a system or controls, consciously failed to monitor or oversee its operations[,] thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *accord Caremark*, 698 A.2d at 971.  "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations," *Stone*, 911 A.2d at 370, and therefore, acted in "bad faith," *Desimone v. Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007) ("a scienter-based standard applies in the delicate monitoring context").

In sum, to excuse demand pursuant to Rule 23.1, Plaintiffs face a formidable challenge: to raise a reasonable doubt that the Board could not have exercised independent and disinterested judgment in addressing a demand, they must allege particularized facts showing that a majority of the Directors face a "substantial likelihood" of personal liability for knowingly not discharging their fiduciary duties through bad-faith failures of oversight – either the failure to implement any reporting or information system or controls, or the conscious failure to monitor or oversee the operations of such system or controls.

## B.  Analysis

Plaintiffs in this action plead both that demand was refused and that demand was excused.  (Compl. ¶ 37.)  Defendant contends that Plaintiffs' action should be dismissed because:  (1) demand was made on the Board and a SLC was appointed to investigate ITT's

potential claims and determine what legal action to take; and (2) demand was not futile, and therefore not excused.

### 1. Demand Refused

Defendant argues that Plaintiffs have conceded that demand was not futile because Plaintiff Reale made a demand on the Board.  Plaintiffs assert that because only Plaintiff Reale, acting independently, made a demand on the Board, Plaintiff Wilkinson is not barred from claiming demand futility.  Moreover, Plaintiffs argue that the consolidation of cases does not effect their merger.  Defendant is correct that "[u]nder the law of Delaware and the States that follow its lead, a shareholder who makes demand may not later assert that demand was in fact excused as futile." *Kamen*, 500 U.S. at 103.  But this point of law does not carry the day because while Plaintiff Reale made a demand, it is Plaintiff Wilkinson who asserts demand futility.  A demand by one shareholder does not bar another shareholder from asserting demand futility.  *See Avacus Partners, L.P. v. Brian*, No. 11001, 1990 Del. Ch. LEXIS 178, at *31 (Del. Ch. Oct. 24, 1990).  Because Plaintiffs Reale and Wilkinson acted independently and brought separate suits, which were later consolidated, Plaintiff Reale's demand on the Board does not prevent Plaintiff Wilkinson from asserting demand futility.  *See Miller v. Loucks*, No. 91-CV-6539, 1992 U.S. Dist. LEXIS 16966, at *22 (N.D. Ill. Nov. 3, 1992) (demand by plaintiff did not preclude co-plaintiffs from asserting demand futility).

The cases cited by Defendant, although they suggest that a demand by one plaintiff could bar a demand futility argument by another, are not, in fact, to the contrary.  In *Boeing Co. v. Shrontz*, No. 11273, 1992 Del. Ch. LEXIS 84, at *14-16 (Del. Ch. Apr. 20, 1992), one of two plaintiffs made a demand by letter, in which he stated his belief that demand was futile, and the

other argued demand futility.  The court, noting that the demand requirement is "not a mere procedural formality," found that the plaintiffs were improperly using both tactics to "cover all the bases."  *Id.* at \*16.  In *Stepak ex rel. Southern Co. v. Addison*, 20 F.3d 398 (11th Cir. 1994), two shareholders, one who made a demand and another who did not, filed suit together, rather than acting independently.  The District Court did not permit them to proceed on both theories. *Id.* at 411-12.  Here, in contrast, there is no suggestion that Plaintiff Reale and Plaintiff Wilkinson, who brought separate actions and were represented by different counsel, acted in concert to "cover all the bases."

Defendant claims that this action should also be dismissed because ITT formed a SLC in response to Reale's demand letter and retained independent counsel to advise and represent it. Defendant argues that Plaintiffs may not pursue this litigation pursuant to Indiana Code § 23-1-32-4 because decisions of the SLC are presumed conclusive unless it can be shown that the SLC was not disinterested or that its determination was not made after a good faith investigation. Plaintiffs point out, however, that the formation of a SLC alone does not require the dismissal of a demand-made action.  Rather, the Court must consider whether the SLC members were disinterested.  *See* Ind. Code Ann. § 23-1-32-4 ("If the committee determines that pursuit of a right or remedy through a derivative proceeding . . . is not in the best interests of the corporation, the merits of that determination shall be presumed to be conclusive against any shareholder making a demand or bringing a derivative proceeding . . . , unless such shareholder can demonstrate that: (1) [t]he committee was not 'disinterested' . . . ; or (2) [t]he committee's determination was not made after an investigation conducted in good faith.").  The Court understands from counsel for the SLC that, now that the SLC has concluded its investigation, it

intends to move to dismiss the Complaint pursuant to Indiana Code § 23-1-32-4 if it is not

dismissed on the instant Motion.  As discussed below, the Complaint is dismissed to the extent it

relies on demand futility, but to the extent it does not, a motion under Section 23-1-32-4 would

not be moot.  In other words, while Plaintiff Wilkinson's case does not survive the instant

motion (unless the defects can be cured by amendment), Plaintiff Reale's does, and would

properly be the subject of a Section 23-1-32-4 motion.[4]

### 2. Demand Excused

Plaintiff Wilkinson alleges that demand was futile and therefore excused because a

majority of the nine-member Board was interested and incapable of properly responding to a

demand.  To meet his pleading burden pursuant to Rule 23.1, he must allege particularized facts

showing that a majority of the Director Defendants face "a substantial likelihood" of personal

liability for failures of oversight, *Rales*, 634 A.2d at 936 (internal quotation marks omitted) – in

other words, that the Directors acted in bad faith, and knowingly did not discharge their fiduciary

duties, by failing to implement any reporting or information system or controls, or having

implemented such a system or controls, by consciously failing to monitor or oversee its

operations, *Stone*, 911 A.2d at 370; *Desimone*, 924 A.2d at 935.

ITT's Articles of Incorporation limit the liability of directors: "[t]o the fullest extent

permitted by applicable law as then in effect, no director or officer shall be personally liable to

the Corporation or any of its shareholders for damages for breach of fiduciary duty as a director

or officer, except for liability . . . for breach of duty if such breach constitutes willful misconduct

---

[4]  The Parties' cursory discussions of the SLC and the effect of its formation, drafted
before the completion of its report and its recommendation that this litigation not be pursued, are
insufficient for the Court to decide the issue at this stage.

or recklessness . . . ." (Aff. of David Elbaum, Ex. N.)  In addition, Indiana Business Corporations

Law provides that, "[a] director is not liable for any action taken as a director, or any failure to

take any action, unless . . . [t]he breach or failure to perform constitutes willful misconduct or

recklessness."  Ind. Code Ann. § 23-1-35-1 (comment (e) explains that "'[w]illful misconduct' or

'recklessness' require, at minimum, a conscious disregard of or indifference to the consequences

of a risky act").  Where, as here, directors are contractually or otherwise exculpated from

liability for particular conduct, a substantial likelihood of liability can only be found if a plaintiff

pleads with particularity a claim against a director that is not exculpated.  *Wood*, 953 A.2d at

141.  Accordingly, Plaintiffs must allege particularized facts showing that the Directors face a

substantial likelihood of liability because they willfully or recklessly breached their fiduciary

duties.

### a.  Specific and Individualized Factual Allegations

Plaintiffs name as defendants ITT's entire nine-member Board of Directors, composed of

the following members:  Steven R. Loranger, Chairman of the Board since December 7, 2004,

and President and CEO of ITT since June 28, 2004; Curtis J. Crawford, director since 1996;

Christina A. Gold, director since 1997; Ralph F. Hake, director since 2002; John J. Hamre,

director since 2000; Raymond W. LeBoeuf, director since 2000; Frank T. Macinnis, director

since 2001; Linda S. Sanford, director since 1998; and Markos I. Tambakeras, director since

2001.  (Compl. ¶¶ 14-23.)  Plaintiffs allege that of the nine directors, only one director,

Loranger, is an insider and member of management.  (*Id.* ¶ 14.)  The others are outside directors

with no other alleged connection to ITT.  (*Id.* ¶¶ 15-22.)  Apart from alleging the individual

Directors' membership on Committees of the Board (*Id.* ¶¶ 29-36), and several paragraphs

discussing public statements made by Loranger (*Id.* ¶¶ 47, 140), the Complaint is completely devoid of allegations with respect to individual Directors.  When alleging misconduct or knowledge of misconduct, the Complaint refers to the "Director Defendants," the "Board," or unnamed ITT employees, rather than to individual Director Defendants.  (*See, e.g.*, *id.* ¶¶ 2, 50-51.)  Whether the Directors face a substantial likelihood of liability must be determined on a director-by-director basis, and thus Plaintiffs' conflation of all the directors into a single entity is insufficient under Rule 23.1.  *See Ferre v. McGrath*, No. 06-CV-1684, 2007 U.S. Dist. LEXIS 29490, at *10, *26 (S.D.N.Y. Feb. 16, 2007).

At oral argument, Plaintiffs conceded that they had not inspected ITT's Board minutes or other records.  Indeed, ITT's counsel stated that he offered to make those records available to Plaintiffs' counsel and that the offer was declined, a decision that baffles this Court.  *See id.* at *24; *see also Rales*, 634 A.2d at 934 n.10 (plaintiffs are not entitled to discovery to assist their compliance with Rule 23.1).  Had Plaintiffs exercised their right to inspect ITT's books and records pursuant to Ind. Code Ann. § 23-1-52-2, they might have been able to plead particularized facts as to what information about criminal misconduct came to the Defendant Directors' attention and when, as well as what actions, if any, they took in response.  Without such particularized allegations, Plaintiffs cannot meet their pleading burden pursuant to Rule 23.1.  *See Ferre*, 2007 U.S. Dist. LEXIS 29490, at *20 ("Delaware courts have made it clear that a derivative plaintiff who fails to avail himself of this device for acquiring information about what the directors knew and when they knew it will not receive the benefit of the doubt.") (citing cases); *Guttman v. Huang*, 823 A.2d 492, 504 (Del. Ch. 2003) (finding lack of particularized allegations regarding precise roles of directors and information that came to their attention, and

admonishing plaintiffs for failing to inspect books and records to gather information necessary to prepare solid complaint).

### b.  Establishment of Internal Controls

Plaintiffs argue that the Board's ignorance of criminal conduct in a crucial segment of ITT's business evidences a lack of meaningful oversight procedures, and that the failure to discuss ITT's criminal conduct at Board meetings shows that a reasonable information and reporting system did not exist.  (Pls.' Opp'n 3-4.)  Plaintiffs do not, however, allege with sufficient particularity that Defendants failed to implement reporting or information systems and controls.  They merely assert in a conclusory fashion that "ITT failed to establish a system to ensure compliance with the relevant federal export laws."  (Compl. ¶ 58.)  Notably, this allegation is not even made against the Director Directors, but rather ITT generally.  (*See id.*)

Although Plaintiffs contend that there was no reasonable information and reporting system, the Complaint admits that there were in place at least four committees of the Board – Corporate Responsibility, Audit, Compensation and Personnel, and Nominating and Governance – which were charged with, among other things, maintaining and implementing a system of internal controls.  (*Id.* ¶¶ 28-29, 31, 33, 35.)  The Complaint does not allege with particularity that the Board or its various committees failed to meet or review and discuss information received from management, including information regarding compliance and the Government investigations of ITT.  *See Guttman*, 823 A.2d at 506-07 (finding that complaint lacked factual allegations critical to a *Caremark* claim, such as lack of board committees, committees' failure to meet regularly and committees' failure to devote adequate time to their work).  In addition, the Complaint points to a number of internal controls established by ITT to ensure compliance with

-14-

applicable laws and regulations.  (*See, e.g.,* Compl. ¶¶ 69 (ITT hired an export license manager),

98 (ITT's Night Vision Unit had export control personnel).)  Although the established controls

ultimately proved to be ineffective in preventing illegal conduct, Plaintiffs do not plead with

particularity facts showing that "the directors utterly failed to implement any reporting or

information system or controls."  *Stone*, 911 A.2d at 370, 372-73; *see Desimone*, 924 A.2d at

940 ("Delaware courts routinely reject the conclusory allegation that because illegal behavior

occurred, internal controls must have been deficient, and the board must have known so.").

### c.  Conscious Failure to Monitor or Oversee Operations

Having failed to allege that the Directors utterly failed to implement any reporting or

information system or controls, Plaintiffs must allege with particularity that, having implemented

such controls, the Director Defendants consciously failed to monitor or oversee their operations.

*See Stone*, 911 A.2d at 370.  Again, Plaintiffs' Complaint lacks specific factual allegations

regarding a majority of the Directors' failure to monitor or oversee ITT's operations.

Plaintiffs allege that the Director Defendants disregarded "red flag" warnings of

misconduct, thereby consciously failing to oversee ITT's operations.  They argue that

Defendants failed to exercise their fiduciary duties by permitting illegal practices to continue

despite: employees documenting long-standing violations of law in 1998; ITT only partially

revealing those practices to the Government in 2000, with the assistance of outside counsel; the

commencement of a Government investigation in 2001, including a search warrant executed at

an ITT facility in 2002; and a 2004 consent agreement with the State Department involving an

$8 million penalty but no admission of wrongdoing.  (Compl. ¶¶ 55, 64-68, 74, 102; Pls.' Opp'n

21.)  Plaintiffs fail, however, to make the critical connection between these events and the

individual Directors.  The Complaint is devoid of allegations regarding whether or when the information regarding these events or the relevant misconduct was actually presented to the individual Directors and what actions, if any, they took in response.  *See Halpert Enters. Inc.*, 362 F. Supp. 2d at 433 (plaintiff failed to specify "red flags" or "obvious danger signs" directors disregarded, and thus did not establish a "substantial likelihood" of director liability that would excuse demand).  The Court cannot make the required determination that a majority of the Directors face a substantial likelihood of liability for their alleged failures of oversight by conscious inaction when Plaintiffs have not provided specific facts on the subject.  *See Guttman*, 823 A.2d at 507 ("impossible to tell anything" about challenged board inaction and "void [not] filled" because plaintiffs failed to procure pertinent records).  While the 2001 Government investigation and the 2004 consent decree would certainly seem sufficient to put the Directors on notice as to possible misconduct at ITT, without any information regarding the individual Directors' responses, if any, to those events, the Court cannot say whether the Directors failed to act or if the actions they took were inappropriate in light of the information they received.  That those steps proved to be insufficient to prevent the continuance of criminal conduct does not itself establish conscious disregard of fiduciary duties.  *See Stone*, 911 A.2d at 373.

Plaintiffs' reliance on *In re Veeco Instruments, Inc. Securities Litigation*, 434 F. Supp. 2d 267, 277 (S.D.N.Y. 2006), is unavailing because plaintiffs in that case pleaded specific facts – including whistle-blower reports, cutbacks in personnel assigned to accounting controls, and a Form 10-K signed by members of the audit committee admitting that the internal controls over financial reporting were deficient – that created a reasonable doubt as to director disinterestedness by showing that the directors consciously permitted violations of law to occur.

-16-

Such specific allegations regarding Defendants' knowledge are lacking here.  Without particularized facts showing that the Directors were aware of misconduct and consciously disregarded their duties, Plaintiffs cannot show that demand was futile.

The fact that the misconduct concerns secret and sensitive information from which ITT derives substantial revenues and sales (Pls.' Opp'n 21), does not mean that the Directors were aware of the misconduct.  The Court cannot assume the Directors' knowledge of misconduct based on such allegations because the Directors cannot be expected to be involved in or have knowledge of all aspects of ITT's daily operations, even significant aspects of daily operation.  *See Caremark*, 698 A.2d at 968 ("Most of the decisions that a corporation, acting through its human agents, makes are, of course, not the subject of director attention.  Legally, the board itself will be required only to authorize the most significant corporate acts or transactions . . . .").

Much of the Complaint focuses on the misconduct of a number of ITT employees.  (*See, e.g.,* Compl. ¶¶ 59-60, 87-88, 95.)  But allegations regarding misconduct or awareness of misconduct by employees without a connection to Defendants is insufficient to show that Defendants consciously or recklessly failed to monitor or oversee ITT's operations.  *See Halpert Enters., Inc.*, 362 F. Supp. 2d at 432 (reasonable doubt as to director's disinterestedness was not raised where plaintiffs alleged a scheme with which some employees were familiar, but never adequately pleaded the board's knowledge of that scheme).  Plaintiffs must allege specific facts demonstrating *Defendants'* bad faith in failing to monitor ITT's operations, not simply other ITT employees' misconduct or knowledge of misconduct.

Plaintiffs stress that the violations of law occurred over a ten-year period and caused massive damage to ITT (Compl. ¶¶ 135-36), and they are right that the criminal conduct was

ongoing and of utmost seriousness.  The magnitude and duration of illegal activities or the size

of the resulting penalties, however, do not establish either deficient controls or a sustained and

systematic conscious failure of oversight.  *See Stone*, 911 A.2d at 373 ("bad outcome" does not

equate to "bad faith"); *David B. Shaev Profit Sharing Account v. Armstrong*, No. 1449-N, 2006

Del. Ch. LEXIS 33, at *19 (Del. Ch. Feb. 13, 2006) ("Absent any facts to show that a board's

ignorance can only be explained by a breach of fiduciary duty, . . . the size of any financial loss

is not a sufficient basis on which to rest liability."), *aff'd*, 911 A.2d 802 (Del. 2006); *Desimone*,

924 A.2d at 940 ("Delaware courts routinely reject the conclusory allegation that because illegal

behavior occurred, internal controls must have been deficient, and the board must have known

so.").

　　　　In cases where courts have considered the magnitude and duration of the alleged

wrongdoing in finding a substantial likelihood of liability, there were also numerous specific

factual allegations supporting director liability.  For example, in *In re Abbott Laboratories*

*Derivative Shareholders Litigation*, 325 F.3d 795 (7th Cir. 2001)*,* plaintiffs alleged that the

chairman of the board received two warning letters from the FDA regarding violations of federal

regulations, that at least one board member met with the FDA numerous times regarding

continuing violations, that the *Wall Street Journal* published an article regarding noncompliance

with regulations, and that the company issued a press release disclosing the FDA's allegations

that it was violating regulations*, id.* at 808-09 (citing *McCall v. Scott*, 239 F.3d 808-09 (6th Cir.

2001)*).*  Plaintiffs have not offered comparable specific factual allegations.  Here, as in

*Caremark*, the "liability that eventuated . . . was huge," but, "the fact that it resulted from a

violation of criminal law alone does not create a breach of fiduciary duty by directors."

-18-

*Caremark*, 698 A.2d at 972.  Absent particularized factual allegations demonstrating the Directors' conscious failure to oversee ITT's operations, the plea agreement and resulting fine do not establish a substantial likelihood of personal liability.  Similarly, the fact of an ongoing investigation by the Government also fails to show a substantial likelihood of liability, given the dearth of allegations in the Complaint regarding the Director's knowledge of or response to the misconduct which became the subject of the plea agreement.

Plaintiffs argue that a substantial likelihood of liability arises from some of the Directors' service on committees of the Board with responsibility for oversight to ensure compliance with laws and regulations.  But neither an awareness of facts nor a conscious disregard of oversight duties can be inferred solely from a director's service on a committee.  *See Ferre*, 2007 U.S. Dist. LEXIS 29490, at *18 ("Allegations of knowledge explained solely by the directors' service as directors, without more, are insufficient as a matter of law – even where, as here, the plaintiff alleges that the matters in suit relate to the corporation's 'core' business."); *Wood*, 953 A.2d at 142-43 (assertion that membership on committee is sufficient basis to infer requisite scienter "is contrary to well-settled Delaware law").  Unlike in *Abbott Laboratories*, 325 F.3d at 808, where numerous specific factual allegations showed that the directors were aware of illegal conduct, and *Veeco Instruments*, 434 F. Supp. 2d at 277-78, where specific factual allegations demonstrated that the audit committee was aware of deficiencies in the internal controls over financial reporting and failed to take action, there are no specific allegations demonstrating Defendants Crawford, Gold, Hake, Hamre, LeBoeuf, MacInnis, Sanford or Tambakeras' knowledge of misconduct or conscious inaction in the face of that knowledge.  Accordingly, a

substantial likelihood of liability will not be inferred from these Directors' service on committees of the Board.

In sum, Plaintiffs fail to raise a reasonable doubt as to Defendants' ability to independently and disinterestedly consider a demand, because Plaintiffs have not shown that a majority of the Director Defendants face a substantial likelihood of liability for consciously failing to fulfill their fiduciary duties.  A derivative complaint that recites descriptions of *employee* misconduct taken from the criminal case filings, combined with generalities about Board responsibilities, is insufficient to meet a plaintiff's burden to plead particularized facts showing a substantial likelihood of liability on the *directors'* parts.  Accordingly, Defendant's Motion to Dismiss pursuant to Rule 23.1 is granted to the extent the Complaint relies on demand futility.[5]

### 3. Leave to Amend

Fed. R. Civ P. 15(a)(2) provides that a court should freely give leave to amend "when justice so requires."  When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.  *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990).  Granting leave to amend is especially appropriate when a complaint is dismissed for lack of specificity.  *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312-13 (S.D.N.Y. 2008) (granting leave to amend second consolidated amended complaint for failure to meet specificity

---

[5]  Plaintiffs' gross mismanagement claim, (Compl. ¶¶ 144-49), is based on the same allegations as Plaintiffs' oversight claim, (*id.* ¶¶ 137-43), and is not an independent cause of action.  *See Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004).  Accordingly, Plaintiffs also fail to allege with particularity that the Directors face a substantial likelihood of liability for gross mismanagement.

requirements of Fed. R. Civ. P. 9(b) and Private Securities Litigation Reform Act).  Because

Plaintiffs' Complaint is dismissed for failure to plead particularized factual allegations

establishing the Directors' willful or reckless disregard of their fiduciary duties, the Court grants

Plaintiffs leave to amend their Complaint by adding such specific allegations, if they can.

Having failed to take advantage of their right as shareholders to inspect ITT's books and records

pursuant to Indiana Code § 23-1-52-2, and apparently having declined a post-complaint offer to

inspect the Board minutes, and not being entitled to discovery on the point, *see Rales*, 634 A.2d

at 934 n.10 (plaintiffs not entitled to discovery to assist their compliance with Rule 23.1),

Plaintiffs may face an uphill battle in remedying these defects by amending the Complaint.  If

Plaintiffs choose to amend their Complaint, they must present particularized factual allegations

to satisfy the heightened pleading requirements of Rule 23.1.  To show that a majority of the

Board faces a substantial likelihood of liability, Plaintiffs must plead specific facts on a director-

by-director basis, demonstrating what each Director knew and when, and specifically what

action, if any, each Director took or failed to take in response.  A recitation of the same or

similar general and conclusory allegations as in the current Complaint will result in dismissal

with prejudice.

### III. Conclusion

Defendant's Motion for Reconsideration of the April 10, 2008 Memorandum and Order

denying Defendant's Motion to Dismiss is granted.  Upon reconsideration, Defendant's Motion

to Dismiss pursuant to Fed. R. Civ. P. 23.1 is granted to the extent that the Complaint relies on

demand futility.  If Plaintiffs choose to amend the Complaint, they must do so within thirty days

of the date of this Memorandum Decision and Order.  Any renewed motion to dismiss by ITT, or

any motion to dismiss by the SLC, shall be served (see this Court's Individual Practices ¶ 2.C)

within thirty days after the filing of the amended complaint or the expiration of the time to do so,

whichever comes first.  Plaintiffs' opposition to the motion(s) shall be served three weeks

thereafter, with any reply by the moving parties to follow two weeks thereafter.

The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 27).

**SO ORDERED.**

Dated: November 25, 2008
       White Plains, New York

CATHY SEIBEL, U.S.D.J.