UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

In re ITT Corporation Derivative Litigation

--------------------------------------------------------------x

07-CV-2878 (CS)

**MEMORANDUM DECISION
AND ORDER**

<u>Appearances</u>:

Robert I. Harwood, Esq.
Samuel K. Rosen, Esq.
Harwood Feffer LLP
New York, New York
*Chair, Plaintiffs' Executive Committee*

Laurence D. Paskowitz, Esq.
Paskowitz & Associates
New York, New York

Joseph H. Weis, Esq.
James E. Tullman, Esq.
David C. Katz, Esq.
Weiss & Lurie
New York, New York
*Plaintiffs' Executive Committee*

Samuel R. Simon, Esq.
Bala Cynwyd, Pennsylvania

Judith Spanier, Esq.
Orin Kurtz, Esq.
Abbey Spanier Rodd & Abrams, LLP
New York, New York

Roy Jacobs, Esq.
Roy Jacobs & Associates
New York, New York

Jules Brody
Stull, Stull & Brody
New York, New York
*Counsel for Plaintiffs*

-1-

Paul C. Curnin, Esq.
David Elbaum, Esq.
Simpson Thacher & Bartlett LLP
New York, New York
*Counsel for Nominal Defendant ITT Corporation*

Susan E. Brune, Esq.
Melissa S. Dassori, Esq.
Brune & Richard LLP
New York, New York
*Counsel for the Special Litigation Committee*

David G. Januszewski, Esq.
Cahill Gordon & Reindel LLP
New York, New York
*Counsel for the Director Defendants*

Seibel, J.

Before the Court are (1) Nominal Defendant ITT Corporation's Motion to Dismiss the

Third Amended Verified Consolidated Complaint ("Third Amended Complaint") filed on March

17, 2009, (Doc. 41); (2) the Motion of Raymond W. LeBoeuf, Frank T. MacInnis, Linda S.

Sanford, Markos I. Tambakeras, Steven R. Loranger, Curtis J. Crawford, Christina A. Gold,

Ralph F. Hake, and John J. Hamre ("Director Defendants") to Dismiss the Third Amended

Complaint, filed on March 17, 2009, (Doc. 58); and (3) the Special Litigation Committee's

Motion to Terminate this Action, filed on March 17, 2009, (Doc. 46).

**I. Background**

On November 13, 2007, Plaintiffs filed a Verified Consolidated Amended Complaint

("Complaint") in this derivative action on behalf and for the benefit of Nominal Defendant ITT

Corporation ("ITT") against the ITT Board of Directors ("Board," "Directors" or "Director

Defendants") for breach of their fiduciary duties and other violations of law.[1]  (Doc. 13.)  The case arises out of a criminal proceeding in which ITT pleaded guilty to federal felonies involving (1) the willful export of defense articles, including night-vision equipment, without a license; and (2) the willful omission of statements of material fact in required arms export reports. (Compl. ¶ 1.)  ITT agreed to pay over $100 million in criminal fines, penalties and forfeitures, and subjected itself to a deferred prosecution agreement.  (*Id.*)  Plaintiffs assert claims against the Director Defendants for breach of fiduciary duty and gross mismanagement.  (*Id.* ¶¶ 137-49.)

Rule 23.1 of the Federal Rules of Civil Procedure ("Rule 23.1") provides that a plaintiff bringing a derivative action must allege with particularity his or her efforts to obtain the desired action from the corporation's board of directors, or explain why such efforts were not made.  In the Complaint, Plaintiffs pleaded alternatively that the Board refused demand and that demand was excused because any efforts to obtain the desired action from the Board would have been futile.  (*Id.* ¶ 37.)  They alleged that Plaintiff Reale demanded by letter dated April 12, 2007, that the Board commence a legal action, and that in the four months between the demand letter and the commencement of Plaintiff Reale's derivative suit, the Board took no action with respect to the demand.  (*Id.* ¶ 38.)  Plaintiffs further alleged that Plaintiff Piven did not make a demand on ITT because doing so would have been futile.  (*Id.* ¶ 39.)  Demand on the Board would have been futile, they argue, because each Director participated in the alleged wrongdoing or otherwise breached his or her oversight duties, and bringing this action directly would, in effect,

---

[1]  The Complaint also named as "John Doe" defendants four ITT managers and an outside law firm.  The "John Doe" defendants have since been dropped (*see* Third Amended Complaint (Doc. 41)), but Plaintiffs have suggested that they might at some point seek to revive the claims against the "John Doe" defendants (*see id.* ¶ 114).

require the Directors to sue themselves for conduct for which insurance would not indemnify them.  (*Id.* ¶¶ 40-51.)

Nominal Defendant ITT filed a Motion to Dismiss the Complaint pursuant to Rule 23.1 on November 30, 2007.  (Doc. 15.)  That Motion was denied on April 10, 2008.  (Doc. 26.)  On April 24, 2008, ITT filed a Motion for Reconsideration.  (Doc. 27.)   On October 28, 2008, Plaintiffs filed, with the Court's permission, a Second Consolidated Verified Amended Complaint ("Second Amended Complaint") for the sole purpose of curing a jurisdictional defect. (Doc. 37.)  Plaintiffs in their Second Amended Complaint dropped Plaintiff Piven as a party and added Plaintiff Wilkinson who, like Plaintiff Piven, did not make a demand on the Board before commencing a derivative action on the basis that such a demand would have been futile.  The substantive allegations were unchanged.  By Memorandum Decision and Order filed November 25, 2008, this Court granted ITT's Motion for Reconsideration.  (Doc. 40.)  Upon reconsideration, this Court granted ITT's Motion to Dismiss to the extent that the Second Amended Complaint relied on demand futility.  The Court found that Plaintiffs failed to make specific allegations regarding each individual director's substantial likelihood of liability for willfully or recklessly breaching his or her fiduciary duties, in that Plaintiffs did not allege with sufficient particularity that Defendants failed to implement reporting or information systems or controls or that, having implemented such controls, the Directors consciously failed to monitor or oversee their operations.  This Court, however, gave Plaintiffs leave to attempt to cure the defects in the Second Amended Complaint by amendment.

Plaintiffs filed a Third Amended Complaint on December 23, 2008.  (Doc. 41.)  Nominal Defendant ITT again moved to dismiss the Third Amended Complaint with prejudice pursuant to

Rule 23.1.  (Doc. 43.)  In addition, the Special Litigation Committee of the Board of Directors of

ITT Corporation (the "SLC") filed a Motion to Terminate this action pursuant to Rule 23.1 and

Indiana Business Corporation Law Section 23-1-32-4.  (Doc. 46.)  Relying on ITT's Motion to

Dismiss and the SLC's Motion to Terminate this Action, the Director Defendants also filed a

Motion to Dismiss the Third Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure.  (Doc. 58.)

## II.  Discussion

### A.  ITT and Director Defendants' Motions to Dismiss

#### 1.  Legal Standards

Rule 23.1(b)(3) of the Federal Rules of Civil Procedure requires a plaintiff bringing a

derivative action to, among other things, "state with particularity:  (A) any effort by the plaintiff

to obtain the desired action from the directors or comparable authority and, if necessary, from

the shareholders or members; and (B) the reasons for not obtaining the action or not making the

effort."  This Federal Rule is the procedural embodiment of the substantive principle of

corporate law that directors are empowered to direct the management of the business and affairs

of the corporation.  *See Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993).  Pursuant to Rule

23.1, derivative plaintiffs must plead specific factual allegations showing that demand is

excused.  Well-pleaded allegations are accepted as true, *Halpert Enters. v. Harrison*, 362 F.

Supp. 2d 426, 430 (S.D.N.Y. 2005), and all reasonable inferences that flow logically from

particularized facts alleged should be drawn in the plaintiff's favor, *Wood v. Baum*, 953 A.2d

136, 140 (Del. 2008).  Conclusory allegations, however, are not considered.  *Halpert Enters.*,

362 F. Supp. 2d at 429-30.

Fed. R. Civ. P. 23.1 is a pleading rule that "creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question." *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991).  The adequacy of those efforts, however, is determined by state law.  *Id.*  The substantive law on demand is the law of the state of incorporation.  *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 108-09 (1991). Because ITT is an Indiana corporation, Indiana law dictates the circumstances under which demand is excused.  Indiana courts, in turn, look to Delaware law when considering cases involving alleged breaches of fiduciary duties.  *See, e.g.*, *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 238 (Ind. 2001) (citing Delaware precedent for principles of corporate law).

The standard for determining demand futility "where the subject of the derivative suit is not a business decision of the board" is set forth in *Rales*, 634 A.2d at 934.  To excuse demand pursuant to *Rales*, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  *Id.*  A director will be deemed interested and incapable of exercising "his or her independent business judgment without being influenced by adverse personal consequences" when a "corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders."  *Id.* at 936.  That "demand on the board would be tantamount to asking the director-Defendants to sue themselves," and the "allegation that the Defendants' directors' and officers' liability policies have an . . . exclusion that precludes coverage . . .," are "insufficient to create a reasonable doubt as to disinterestedness."  *Kernaghan v. Franklin*, No. 06-CV-1533, 2008 U.S. Dist. LEXIS 75447, at

*22-23 (S.D.N.Y. Sept. 29, 2008) (internal quotation marks omitted); *accord King v. Baldino*, No. 08-CV-54, 2009 U.S. Dist. LEXIS 76132, at *30-31 (D. Del. Aug. 26, 2009) ("Were demand to be found futile merely because directors would be suing themselves . . . the demand requirement of Rule 23.1 would be eviscerated." (internal quotation marks omitted) (alteration in original)).  A director must face more than a "mere threat" of personal liability to be considered interested and incapable of exercising his or her business judgment in considering a demand. *Rales*, 634 A.2d at 936.  To be deemed interested, a director must face "a substantial likelihood" of personal liability.  *Id*. (internal quotation marks omitted).

Claims for breach of fiduciary duty premised on director oversight are analyzed according to the standards set forth in *In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996).  This theory of director liability is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *Id.* at 967.  The "necessary conditions predicate for director oversight liability" are: (1) "the directors utterly failed to implement any reporting or information system or controls;" or (2) "having implemented such a system or controls, consciously failed to monitor or oversee its operations[,] thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *accord Caremark*, 698 A.2d at 971.  "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations," *Stone*, 911 A.2d at 370, and therefore, acted in "bad faith," *Desimone v. Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007) ("a scienter-based standard applies to claims in the delicate monitoring context").

In sum, to excuse demand pursuant to Rule 23.1, Plaintiff Wilkinson must raise a reasonable doubt that the Board could have exercised independent and disinterested judgment in addressing a demand, by alleging particularized facts to show that a majority of the Directors face a "substantial likelihood" of personal liability for knowingly not discharging their fiduciary duties through bad-faith failures of oversight – either the failure to implement any reporting or information system or controls, or the conscious failure to monitor or oversee the operations of such system or controls.

### 2. Disinterestedness

Plaintiff Wilkinson alleges that demand was futile and therefore excused because a majority of the nine-member Board was interested and incapable of properly responding to a demand.  To meet his pleading burden pursuant to Rule 23.1, he must allege particularized facts showing that a majority of the Director Defendants face "a substantial likelihood" of personal liability for failures of oversight, *see Rales*, 634 A.2d at 936 (internal quotation marks omitted) – in other words, a substantial likelihood that it will be proven that the Directors acted in bad faith, and knowingly did not discharge their fiduciary duties, by failing to implement any reporting or information system or controls, or having implemented such a system or controls, by consciously failing to monitor or oversee its operations, *see Stone*, 911 A.2d at 370; *Desimone*, 924 A.2d at 935.

ITT's Articles of Incorporation limit the liability of directors:  "[t]o the fullest extent permitted by applicable law as then in effect, no director or officer shall be personally liable to the Corporation or any of its shareholders for damages for breach of fiduciary duty as a director or officer, except for liability . . . for breach of duty if such breach constitutes willful misconduct

or recklessness . . . ."  (Aff. of David Elbaum Ex. I at 11.)  In addition, Indiana Business

Corporations Law provides that, "[a] director is not liable for any action taken as a director, or

any failure to take any action, . . . unless . . . [t]he breach or failure to perform constitutes willful

misconduct or recklessness."  Ind. Code Ann. § 23-1-35-1(e)(2) (2009) (comment (e) explains

that "'[w]illful misconduct' or 'recklessness' require, at minimum, a conscious disregard of or

indifference to the consequences of a risky act").  Where, as here, directors are contractually or

otherwise exculpated from liability for particular conduct, a substantial likelihood of liability can

only be found if a plaintiff pleads with particularity a claim against a director that is not

exculpated.  *See Wood*, 953 A.2d at 141.  Accordingly, the principle that directors are

empowered to direct the management of the corporation's business and affairs, the protection of

ITT's exculpatory provision, and the difficulty of proving a failure of oversight claim "together

function to place an extremely high burden on . . . plaintiff[s]" – they must allege particularized

facts showing that the Directors face a substantial likelihood of liability because they willfully or

recklessly breached their fiduciary duties.  *In re Citigroup Inc. S'holder Derivative Litig.*, 964

A.2d 106, 125 (Del. Ch. 2009).

### a.  Specific and Individualized Factual Allegations

As in their Second Amended Complaint, Plaintiffs in the Third Amended Complaint

name as Defendants ITT's entire nine-member Board of Directors, composed of the following

members:  Steven R. Loranger, Chairman of the Board since December 7, 2004, and President

and CEO of ITT since June 28, 2004; Curtis J. Crawford, director since 1996; Christina A. Gold,

director since 1997; Ralph F. Hake, director since 2002; John J. Hamre, director since 2000;

Raymond W. LeBoeuf, director since 2000; Frank T. MacInnis, director since 2001; Linda S.

Sanford, director since 1998; and Markos I. Tambakeras, director since 2001.  (Third Am.

Compl. ¶¶ 21-29.)  Plaintiffs allege that only one director, Loranger, is an insider and member of

management.  (*Id.* ¶ 21.)  The others are outside directors with no other alleged connection to

ITT.  (*Id.* ¶¶ 22-29.)

       The Third Amended Complaint, like the Second Amended Complaint, lacks the specific

allegations regarding each individual director necessary to permit the Court to determine that a

majority of the Directors face a substantial likelihood of liability.  The only Director-specific

allegations included in the Third Amended Complaint are allegations regarding the individual

Directors' membership on Committees of the Board (*id.* ¶¶ 35, 37, 39, 41), several paragraphs

discussing remedial measures taken by Loranger and Hamre (*id.* ¶¶ 5, 45(a), 45(i)), and

allegations regarding public statements made by Loranger (*id.* ¶ 45(d)).  Specifically, the Third

Amended Complaint alleges that only in fall of 2005, after the Government advised Defendant

Loranger and the other Director Defendants of its evidence and decision to seek an indictment,

did Loranger order ITT to cooperate with the Government by accepting responsibility for past

criminal actions.  As part of these efforts, Plaintiffs contend that Loranger hired new outside

counsel and ordered a complete internal investigation, the findings of which were to be shared

with the Government.[2]  (*Id.* ¶¶ 5, 45(a).)  With respect to Defendant Hamre, Plaintiffs allege that

the Board directed him in December 2002 or early 2003, to investigate illegal activities in

connection with ITT's compliance with export laws.  They point to this conduct as an example of

_____

    [2]  The March 27, 2007 Statement of U.S. Attorney John Brownlee regarding ITT's Guilty
Plea, which was appended to Plaintiff s' Third Amended Complaint, commended Loranger –
who had joined ITT in June 2004, and joined the Board in December 2004 – with respect to
these actions stating that his "cooperation and strong leadership may have saved ITT from
permanent ruin."  (Third Am. Compl. Ex. A at 7.)

ITT's flawed information system, given that the illegal activities continued until May 2006.  (*Id.* ¶ 45(i).)  The Third Amended Complaint also includes an allegation that Loranger admitted in a March 30, 2007 press release that ITT's violations made it clear that there were gaps in the compliance program.  (*Id.* ¶ 45(d).)

These allegations regarding two individual Directors are insufficient to show that a majority of the nine-member Board faces a substantial likelihood of liability.  *See In re Citigroup Inc.*, 964 A.2d at 121 n.36 (even if complaint sufficiently alleged demand futility as to two directors, not sufficient to establish it as to majority of thirteen-member board).  Moreover, the allegations regarding the actions taken by Loranger and Hamre in response to information regarding illegal activities highlight specific remedial measures taken by the Board (albeit not always effective ones) rather than demonstrating a wholesale failure of oversight.  Further, rather than pointing to individual Directors when alleging misconduct or knowledge of misconduct, the Third Amended Complaint refers collectively to the "Director Defendants," the "Board," "ITT," or unnamed ITT employees.[3]  (*See, e.g.*, Third Am. Compl. ¶¶ 2, 4, 6-7, 10, 13, 45, 62.)  As made clear in the November 25, 2008 Memorandum Decision and Order, whether the Directors face a substantial likelihood of liability must be determined on a director-by-director basis, and thus Plaintiffs' conflation of all the directors into a single entity is insufficient under Rule 23.1.  *See In re Citigroup Inc.*, 964 A.2d at 121 n.36 (plaintiffs failed to plead demand futility where

---

[3]  Plaintiffs citation to *McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001), is unavailing because in that case plaintiffs pleaded specific facts with respect to at least five of the individual director defendants comprising a majority of the board of directors.  For example, plaintiffs in that case alleged with specificity the relevant prior experience of the individual directors, specific reports given to the directors and the information contained therein, specific meetings attended and information obtained by some of the individual directors, and other particularized facts to show what information the individual directors had and disregarded and when.

instead of individualized assertions, they relied on "group accusation mode of pleading"); *Ferre v. McGrath*, No. 06-CV-1684, 2007 U.S. Dist. LEXIS 29490, at *10, *26 (S.D.N.Y. Feb. 16, 2007) (allegations pleaded generally against "defendants" are "impermissible").

### b. Establishment of Internal Controls

Plaintiffs allege in conclusory fashion that because the information system implemented by the Defendant Directors failed to prevent long-term illegal acts, it was so flawed that it amounted to a sham reporting system, which is no reporting system at all.  (Third Am. Compl. ¶¶ 45(c), 45(h), 146.)  This allegation is not, however, sufficiently particularized to meet Plaintiffs' burden under Rule 23.1.  Moreover, Plaintiffs' own allegations show that there were in place at least four committees of the Board which were responsible for, among other things, maintaining and implementing a system of internal controls.  (*Id.* ¶¶ 35-42.)  Like the Second Amended Complaint, the Third Amended Complaint does not allege with particularity that the Board or its various committees failed to meet or review and discuss information received from management, including information regarding compliance and the Government investigations of ITT.  *See Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 506-07 (Del. Ch. 2003) (finding that complaint lacked factual allegations critical to *Caremark* claim, such as lack of board committees, committees' failure to meet regularly and committees' failure to devote adequate time to work). In addition, Plaintiffs' allegations indicate that there were a number of internal controls established by ITT to ensure compliance with applicable laws and regulations.  (*See, e.g.,* Third Am. Compl. ¶¶ 72 (ITT hired an export license manager), 102 (ITT's Night Vision Unit had export control personnel)); *see King*, 2009 U.S. Dist. LEXIS 76132, at *38-39 (plaintiffs' own allegations demonstrated existence of oversight mechanisms).  As the Court explained in its

-12-

November 25, 2008 Memorandum Decision and Order, the fact that the controls put in place ultimately failed to prevent illegal conduct does not mean that "the [D]irectors utterly failed to implement any reporting or information system or controls."  *Stone*, 911 A.2d at 370, 372-73; *see Desimone*, 924 A.2d at 940 ("Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so.").

### c. Conscious Failure to Monitor or Oversee Operations

Having failed to allege that the Directors utterly failed to implement any reporting or information system or controls, Plaintiffs must allege with particularity that, having implemented such controls, the Director Defendants consciously failed to monitor or oversee their operations. *See Stone*, 911 A.2d at 370.  Like the Second Amended Complaint, Plaintiffs' Third Complaint lacks specific factual allegations sufficient to create a substantial likelihood of success on its claim that a majority of the Directors consciously failed to monitor or oversee ITT's operations.

Plaintiffs allege that "the Director Defendants ignored red flags of felonious Company conduct while having actual or constructive knowledge of that misconduct."  (Third Am. Compl. ¶ 146.)  First, Plaintiffs contend that the Director Defendants should have been alerted to wrongdoing at ITT in April 2000, when ITT engaged an outside law firm to prepare and send to the State Department on behalf of ITT's Night Vision unit a preliminary notification of voluntary disclosures regarding ITT's failure to obtain temporary export licenses for its night vision goggles.  (*Id.* ¶¶ 2, 3, 45(f)(i).)  Plaintiffs do not, however, even allege that Plaintiffs were actually notified of the retention of counsel for that purpose in 2000.  Rather, they contend that "if" this information was brought to the Board's attention, the Directors failed to fulfill their

duties by taking action to address it.[4]  (*Id.* ¶ 45(f)(i).)  Such speculative and vague allegations are insufficient to establish that a majority of the Defendants were aware of illegal conduct and consciously failed to act.  *See In re Pfizer, Inc. Derivative Sec. Litig.*, 307 F. App'x 590, 593 (2d Cir. 2009) (plaintiffs did not plead and court could not presume that pertinent information was given to directors).

The second "red flag" purportedly ignored by Defendants was the initiation of the Government's criminal investigation against ITT.  (Third Am. Compl. ¶¶ 2-3.)  Plaintiffs assert that on December 2 and 3, 2002, the Board was informed of the Government's criminal investigation, which began in August 2001, and of the execution of a search warrant on October 29, 2002, in connection with that investigation.  (*Id.* ¶ 45(f)(ii).)  Citing the Brownlee Statement, Plaintiffs argue that for three years after the search warrant was executed, ITT and its outside attorneys fought the Government's investigation, sought to run out the clock on the statue of limitations, and took actions (such as dubious invocations of privilege) to prevent the Government from uncovering the truth.  (Pls.' Mem. of Law in Opp'n to ITT's Mot. to Dismiss 5.)  They contend that in the face of these red flags, the Director Defendants should have prevented ITT from "stonewall[ing]" the Government's investigation.  (*Id.* 6.)  Plaintiffs do not allege that the Directors stonewalled the Government or directed management to do so, or even that the Directors were aware that management and its outside counsel had embarked on such a course.  While the allegations of the Third Amended Complaint specify what information

---

[4]  Plaintiffs also contend that if Defendants were not alerted to this information, it would demonstrate that they utterly failed to implement a reporting system.  (Third Am. Compl. ¶ 45(f)(i).)  As explained above, however, such conclusory allegations are insufficient to meet Plaintiffs' pleading burden and, in any event, are belied by other allegations in the Third Amended Complaint.  *See* Section II.A.2.b.

Defendants received and when, they do nothing to show what actions, if any, each individual Director actually took in response.  *See In re Intel Corp. Derivative Litig.,* 621 F. Supp. 2d 165, 174 (D. Del. 2009) (substantial likelihood of liability not pleaded where plaintiff identified "red flags" but "fail[ed] to identify what the Directors actually knew about the 'red flags' and how they responded to them"); *In re Citigroup Inc.*, 964 A.2d at 129 (insufficient allegations regarding oversight failure where plaintiff did not "adequately explain what the director defendants actually did or failed to do"); *Guttman*, 823 A.2d at 507 ("impossible to tell anything" about challenged board inaction and "void [not] filled" because plaintiffs failed to procure pertinent records).  As in the Second Amended Complaint, Plaintiffs fail to make the necessary connection between continuing wrongdoing at ITT and the individual Directors.  Simply alleging that wrongdoing continued at ITT and that ITT fought the Government investigation says nothing about what the individual Directors did or did not do to prevent or cause these actions and, therefore, does not establish that a majority of the Directors consciously disregarded their duty to monitor and oversee ITT's operations.

The final red flag allegedly before the Directors was information, conveyed in fall 2005, that the Government possessed evidence of wrongdoing and had decided to pursue criminal proceedings.  (Third Am. Compl. ¶ 45(f)(iii).)  Plaintiffs contend that the fact that wrongdoing continued at ITT until May 2006 demonstrates that Defendants did not satisfy their duties to oversee ITT in light of this information.  (*Id.* ¶ 45(f)(iv).)  Plaintiffs' own Third Amended Complaint states, however, that Defendant Loranger instructed ITT to cooperate with the investigation and accept responsibility for any past criminal actions, hired new outside counsel and ordered a complete internal investigation, the findings of which were to be shared with the

Government.  (*Id.* ¶¶ 5, 45(a).)  Plaintiffs have pleaded with particularity only those steps taken by an individual Director to address wrongdoing that was brought to the Board's attention.[5]  As noted earlier, that those steps proved to be insufficient to prevent the continuance of criminal conduct does not itself establish conscious disregard of fiduciary duties.  *See Stone*, 911 A.2d at 373 ("directors' good faith exercise of oversight responsibility may not invariably prevent employees from violating criminal laws, or from causing the corporation to incur significant financial liability, or both").  Without any particularized allegations regarding the individual Directors' conscious failure to fulfill their duties – what they did or did not do following receipt of the information – Plaintiffs cannot satisfy their burden of pleading that five of the Director Defendants face a substantial likelihood of liability.

Plaintiffs make various other allegations in an attempt to plead particularized facts sufficient to show that the Directors consciously failed to monitor or oversee ITT's operations. Plaintiffs point to the March 30, 2007 press release in which Loranger admitted that "violations . . . made it clear that we had gaps in our compliance program."  (Third Am. Compl. ¶¶ 45(d)-(e).)  This statement does not show that the Directors had knowledge of misconduct or knowledge of those gaps at an earlier time and failed to take appropriate actions in light of that knowledge.  Rather, this statement shows only that as of March 30, 2007, the Directors had knowledge that there had been gaps in ITT's compliance program.  Plaintiffs' assertion that those "gaps" were part of a pervasive problem of ITT officials' willful blindness similarly does

---

[5]  Plaintiffs have not, as did plaintiffs in *In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 809 (7th Cir. 2003), alleged sufficient facts to show that a majority of the Board had knowledge regarding violations of the law and intentionally "took no steps in an effort to prevent or remedy the situation."

nothing to show what the Directors knew and when and what actions, if any, they took in response.

In addition, the fact that the misconduct concerned ITT's night vision unit, which as of 2000, provided over 4% of ITT's total revenues (*id.* ¶ 3.), does not mean that the Directors were aware of the misconduct.  *See Jones ex rel. CSK Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325, 1337 (D. Ariz. 2007) ("Courts have repeatedly held that a plaintiff must allege more than that Directors should have known or must have known about matters relating to the corporation's core business." (internal quotation marks omitted)).  Such allegations are insufficient to demonstrate the Directors' knowledge of improprieties because the Directors cannot be expected to be involved in or have knowledge of all aspects of ITT's daily operations, even significant aspects of daily operation.  *See Caremark*, 698 A.2d at 968 ("Most of the decisions that a corporation, acting through its human agents, makes are, of course, not the subject of director attention.  Legally, the board itself will be required only to authorize the most significant corporate acts or transactions . . . .").

Plaintiffs contend that those Directors who were members of the Corporate Responsibility, Audit, Personnel and Governance Committees face a substantial likelihood of liability because they failed to monitor and oversee ITT's operations as required by their service on those committees.  (Third. Am. Compl. ¶¶ 46-49.)  As the Court explained at length in its November 25, 2008 Memorandum Decision and Order, neither an awareness of facts nor a conscious disregard of oversight duties can be inferred solely from a director's service on a committee, which had responsibility for oversight to ensure compliance with laws and regulations.  *See In re Verifone Holdings, Inc. S'holder Derivative Litig.*, No. 07-CV-6347, 2009

-17-

U.S. Dist. LEXIS 44138, at *21 (N.D. Cal. May 26, 2009) ("It is conclusory to state that the directors knew about the internal problems in accounting because they were on the Audit Committee . . . ."); *Kernaghan*, 2008 U.S. Dist. LEXIS 75447, at *24 (allegations regarding director defendants service on committees of board were too vague to "establish a particularized connection between the Defendants' roles and any wrongdoing"); *Ferre*, 2007 U.S. Dist. LEXIS 29490, at *18 ("Allegations of knowledge explained solely by the directors' service as directors, without more, are insufficient as a matter of law – even where, as here, the plaintiff alleges that the matters in suit relate to the corporation's 'core' business."); *Wood*, 953 A.2d at 142-43 (assertion that membership on committee is sufficient basis to infer requisite scienter "is contrary to well-settled Delaware law").[6]

A substantial portion of the Third Amended Complaint, like the Second Amended Complaint, focuses on the misconduct of a number of ITT employees. (*See, e.g.,* Third Am. Compl. ¶¶ 62, 90, 96-97.) Allegations regarding misconduct or awareness of misconduct by employees without a connection to Defendants are, however, insufficient to show that Defendants consciously or recklessly failed to monitor or oversee ITT's operations. *See Halpert Enters., Inc.*, 362 F. Supp. 2d at 432 (reasonable doubt as to director's disinterestedness was not raised where plaintiffs alleged scheme with which some employees were familiar, but never

---

[6] Unlike in *Abbott Laboratories*, 325 F.3d at 808, where numerous specific factual allegations showed that the directors were aware of illegal conduct, and *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 277-78 (S.D.N.Y. 2006), where specific factual allegations demonstrated that the audit committee was aware of deficiencies in the internal controls over financial reporting and failed to take action, there are no specific allegations demonstrating Defendants Crawford, Gold, Hake, Hamre, LeBoeuf, MacInnis, Sanford or Tambakeras' knowledge of misconduct or conscious inaction in the face of that knowledge. Accordingly, a substantial likelihood of liability will not be inferred from these Directors' service on committees of the Board.

adequately pleaded the board's knowledge of that scheme).  Plaintiffs must allege specific facts

demonstrating *Defendants'* bad faith in failing to monitor ITT's operations, not simply ITT

employees' misconduct or knowledge of misconduct.

      Moreover, Plaintiffs assert only conclusory and vague allegations regarding the Directors

purported interestedness.  For example, they allege that to bring this action, the Directors "would

have been required to sue themselves and/or their fellow directors" or "allies" and that their

unwillingness to do so was evidenced by the SLC's determination not to sue either its outside

law firm or the Directors.  (Third Am. Compl. ¶¶ 45(n), 51.)  Courts have long held that such

rote allegations are insufficient to meet the pleading requirements of Rule 23.1.  *See Kernaghan*,

2008 U.S. Dist. LEXIS 75447, at *23 (allegation that demand would be futile because directors

would be required to sue themselves are "insufficient to create a reasonable doubt as to

disinterestedness"); *In re Citigroup Inc.*, 964 A.2d at 121 ("Demand is not excused solely

because the directors would be deciding to sue themselves.").

      In sum, having considered Plaintiffs' allegations collectively and in their totality, I find

that Plaintiffs fail to raise a reasonable doubt as to Defendants' ability to independently and

disinterestedly consider a demand, because Plaintiffs have not shown that a majority of the

Director Defendants face a substantial likelihood of liability for consciously failing to fulfill their

fiduciary duties.  Here, as in *Caremark*, the "liability that eventuated . . . was huge," but, "the

fact that it resulted from a violation of criminal law alone does not create a breach of fiduciary

duty by directors."  *Caremark*, 698 A.2d at 972.  Thus, Defendants' Motion to Dismiss Plaintiff

Wilkinson's claims pursuant to Rule 23.1 is granted.[7]

**B. Dismissal with Prejudice as to Claims Based on Demand Futility**

Although Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court should freely give leave to amend "when justice so requires," this Court has already given Plaintiff Wilkinson an opportunity to amend his allegations to plead particularized facts establishing a substantial likelihood that the Directors willfully or recklessly disregarded their fiduciary duties. The Court in its November 25, 2008 Memorandum Decision and Order advised Plaintiff Wilkinson that a recitation of the same or similar general and conclusory allegations as included in the Second Amended Complaint would result in dismissal with prejudice. The Court also noted that having failed to take advantage of his right as a shareholder to inspect ITT's books and records pursuant to Indiana Code § 23-1-52-2, and having declined a post-complaint offer to do so, and not being entitled to discovery on the point, *see Rales*, 634 A.2d at 934 n.10 (plaintiffs not entitled to discovery to assist their compliance with Rule 23.1), he faced an uphill battle in remedying the defects by amending the Second Amended Complaint. Now, having failed to present particularized factual allegations to satisfy the heightened pleading requirements of Rule 23.1 by pleading specific facts on a director-by-director basis, demonstrating what each Director knew and when, and specifically what action, if any, each Director took or failed to take in response, the Third Amended Complaint is dismissed with prejudice as to Plaintiff

---

[7]   Because Plaintiffs' gross mismanagement claim, (Third Am. Compl. ¶¶ 148-53), is based on the same allegations as their oversight claim, (*id.* ¶¶ 141-47), and is not an independent cause of action, *see Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004), they have also failed to allege with particularity that the Directors face a substantial likelihood of liability for gross mismanagement.

Wilkinson's claims.

### C.  SLC's Motion to Terminate

Having determined that ITT and the Director Defendants' Motions to Dismiss are granted and the Third Amended Complaint is dismissed as to Plaintiff Wilkinson, the Court turns to the claims of Plaintiff Reale, who did make a demand on the Board.  The SLC argues that this action should be terminated in its entirety pursuant to Indiana Code Section 23-1-32-4 because the SLC, which is comprised of three independent and disinterested directors who were vested with full authority to investigate the claims asserted in this action and decide whether ITT should pursue them, has conducted a good faith and thorough investigation of Plaintiffs' claims and has determined that they are without merit and that it is not in ITT's best interest to pursue them.

Indiana Code Section 23-1-32-4 provides that the board of directors "may establish a committee," which is "not subject to the direction or control of or termination by the board," "consisting of three (3) or more disinterested directors . . . to determine" whether "the corporation has a legal or equitable right or remedy" and whether "it is in the best interests of the corporation to pursue that right or remedy, if any, or to dismiss a proceeding that seeks to assert that right or remedy on behalf of the corporation."  Ind. Code Ann. § 23-1-32-4(a), (b) (2009). Section 23-1-32-4 further provides that the SLC's determination is "conclusive against any shareholder making a demand or bringing a derivative proceeding with respect to such right or remedy, unless such shareholder can demonstrate" that the "committee was not 'disinterested'" or that the "committee's determination was not made after an investigation conducted in good faith."  Id. § 23-1-32-4(c).

ITT's Board of Directors formed the SLC in response to Plaintiff Reale's April 12, 2007

demand letter.  The SLC is comprised of three outside directors:  Curtis J. Crawford, Raymond

W. LeBoeuf, and Frank T. MacInnis ("SLC Directors").  The Board resolved on October 9,

2007, to delegate to the SLC "all lawful authority of the Board of Directors in determining what

action, if any, [ITT] should take with respect to [Reale's] demand letter."  (Decl. of Frank T.

MacInnis Ex. A (Minutes of the Oct. 8 and 9, 2007 Board Meetings) 17-18.)  Thus, in

accordance with Section 23-1-32-4(a) and (b), the SLC was composed of three directors and "not

subject to the direction or control" of the Board.  *See* Ind. Code Ann. § 23-1-32-4(a), (b).  Thus,

its decision is conclusive unless its members were not disinterested or its investigation was not

conducted in good faith.

Plaintiffs bear the burden of proving that the SLC was not "disinterested" or did not

conduct its investigation in good faith.  *Id.* § 23-1-32-4(d); *see Marcuccilli v. Ken Corp.*, 766

N.E.2d 444, 452 (Ind. Ct. App. 2002) ("plaintiff shareholders bear the burden of *proving* that the

committee was not 'disinterested' or did not conduct its investigations in good faith" (emphasis

in original) (quoting *Cutshall v. Barker*, 733 N.E.2d 973, 978 (Ind. Ct. App. 2000))).  While I do

not doubt, and Plaintiffs do not seriously dispute, that the SLC's investigation was undertaken in

good faith,[8] the disinterestedness of the SLC presents a more difficult question.

---

[8]  "[A] plaintiff challenging the good faith of a special litigation committee investigation
must prove that the . . . investigation was so restricted in scope, so shallow in execution, or
otherwise so *pro forma* or half-hearted as to constitute a pretext or sham."  *Marcuccilli*, 766
N.E.2d at 452 (alteration in original) (internal quotation marks omitted).  Plaintiffs argue in a
cursory fashion that the SLC "Report was not done in good faith, because [the SLC Directors]
consciously disregarded their board duties and because they were involved in Board misconduct
for at least 3 ½ years" (Pls.' Mem. of Law in Opp'n to the SLC's Mot. to Terminate this Action
12; *see* Third Am. Compl. ¶ 53 ("The Report, prepared by the non-independent SLC, was a
whitewash of the Board's conduct during the relevant time period . . . .").)  The SLC Directors
contend, as well as present evidence to show, that they are experienced in board management
and corporate governance, retained qualified independent counsel to assist them in their seven-

Pursuant to Section 23-1-32-4(d), a director is "disinterested" if (1) the director has "not been made a party to a derivative proceeding seeking to assert the right or remedy," or "has been made a party but only on the basis of a frivolous or insubstantial claim or for the sole purpose of seeking to disqualify the director . . . from serving on the committee;" (2) is capable "under the circumstances" of rendering a "determination in the best interests of the corporation;" and (3) is "not an officer, employee, or agent of the corporation or of a related corporation." *Id.* § 23-1-32-4(d).

All three members of the SLC are parties to this action. Thus, the SLC Directors cannot be considered disinterested unless they were made parties to this action "only on the basis of a frivolous or insubstantial claim or for the sole purpose of seeking to disqualify" them from serving on the committee. *Id.* § 23-1-32-4(d)(1). The SLC Directors do not claim that Plaintiffs made them parties to this action for the sole purpose of seeking to disqualify them from serving on the SLC. Rather, they contend that Plaintiffs' claims against them are frivolous because Plaintiffs have failed to prove that the SLC Directors breached their fiduciary duties. The Parties have not pointed to any case law interpreting the term "frivolous" within the meaning of Section

---

month long investigation, held seven formal meetings, conducted eleven interviews, reviewed thirty-five interviews already conducted, reviewed a multitude of relevant documents, and drafted a thirty-eight page report detailing their findings and conclusions. (*See* Report of Investigation by the SLC 11-15; Decl. of Frank T. MacInnis ¶¶ 22-30; Decl. of Curtis J. Crawford ¶¶ 23-31; Decl. of Raymond W. LeBoeuf ¶¶ 21-30.) Given this evidence and the fact that Plaintiffs have presented no evidence to support their conclusory contention, Plaintiffs have failed to meet their burden of proving that the SLC's investigation was a mere pretext or sham. *See Marcuccilli*, 766 N.E.2d at 453 (affirming dismissal of derivative claims where plaintiffs presented no evidence to support contention that investigation was not conducted in good faith); *Cutshall*, 733 N.E.2d at 982 (plaintiffs failed to demonstrate that investigation was not conducted in good faith where SLC reviewed over 2,000 pages of documents, interviewed nearly all parties to action, held four meetings and drafted fourteen-page report).

23-1-32-4, and the Court has found none.  Thus, the Court looks to the ordinary and plain meaning of the term – i.e., having no sound basis.  *See* Ind. Code § 1-1-4-1 ("Words and phrases shall be taken in their plain, or ordinary and usual, sense.  Technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import."); *T.W. Thom Constr. v. City of Jeffersonville*, 721 N.E.2d 319, 324 (Ind. Ct. App. 1999) ("The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the ordinary and plain meaning of the language used."); *see also Bonime v. Avaya, Inc.*, 547 F.3d 497, 503 (2d Cir. 2008) ("statutory construction begins with statutory text and its plain meaning").  Another Section of the Indiana Code, which governs the screening process for offender litigation, defines a frivolous claim as one "made primarily to harass" or that "lacks an arguable basis either in law or fact."  Ind. Code Ann. § 34-58-1-2(b); *Higgason v. Ind. Dep't of Corr.*, 883 N.E.2d 812, 814 (Ind. 2008).  The Indiana Supreme Court has also defined a frivolous claim as one "made primarily to harass or maliciously injure another, if the proponent is not able to make a good-faith and rational argument on the merits of the claim, or if the proponent cannot support the action by a good-faith and rational argument for extension, modification, or reversal of existing law."  *Sumbry v. Boklund*, 836 N.E.2d 430, 431 (Ind. 2005).

Based on this understanding of the term, the Court finds that Plaintiffs' claims against the SLC Directors are not frivolous.  First, the SLC Directors have not argued and there is nothing in the record to indicate that Plaintiffs filed suit against the SLC Directors to harass them.  Moreover, although this Court has granted ITT's Motion to Dismiss for failure to make particularized allegations regarding each individual Director's substantial likelihood of liability for willfully or recklessly breaching his or her fiduciary duties, I did not find that Plaintiffs'

claims were without arguable basis either in law or fact.  Notably, the standard for showing a

lack of disinterestedness pursuant to Section 23-1-32-4(d) differs markedly from – and is much

more plaintiff-friendly than – the much more onerous standard for showing a lack

disinterestedness in the demand futility context.  In the demand futility context Plaintiffs are

required to plead particularized facts to show a substantial likelihood that the Directors acted in

bad faith, and knowingly did not discharge their fiduciary duties; in the context of Section 23-1-

32-4(d), Plaintiffs are required to show only that the claims asserted against the Directors are not

"frivolous."[9]  After reviewing Plaintiffs' Third Amended Complaint and the Parties' submissions

on the Motions, the Court finds that Plaintiffs' claims are not without arguable basis in law or

fact, and that Plaintiffs have made good faith and rational arguments on the merits of their

claims.  Thus, Plaintiffs' claims against the SLC Directors are not frivolous and, therefore, the

SLC Directors are not "disinterested" within the meaning of Section 23-1-32-4.  Accordingly,

the SLC's determination that the instant lawsuit should not be pursued is not conclusive against

Plaintiff Reale and the SLC's Motion is denied.  *See* Ind. Code Ann. § 23-1-32-4(c); *In re*

*Guidant S'holders Derivative Litig.*, 841 N.E.2d 571, 575 (Ind. 2006) ("decision of the

disinterested directors . . . is presumed to be conclusive, except where a claimant could establish

---

[9]  The SLC cites *Marcuccilli v. Ken Corp.*, 766 N.E.2d 444 (Ind. Ct. App. 2002), for the
proposition that the SLC members may be considered disinterested despite the fact that they are
named as Defendants in this action.  (SLC's Mem. of Law in Supp. of Mot. to Terminate this
Action 19-20 n.12.)  In *Marcuccilli*, however, the court found that the directors serving on the
special litigation committee were disinterested despite the fact that they were named defendants
in the derivative action only because plaintiffs in that action "had not submitted any evidence
demonstrating that the committee was not disinterested or failed to act in good faith in
accordance with the statute."  *Marcuccilli*, 766 N.E.2d at 453.  Here, although Plaintiffs have not
presented sufficient evidence to establish a substantial likelihood of liability, they have presented
some evidence.

that the committee was not disinterested or that its determination had not been made after a good

faith investigation").

The SLC seems to argue that the standard for director disinterestedness under Section 23-

1-32-4 is the same as it is under Rule 23.1.  (*See* SLC's Mem. of Law in Supp. of Mot. to

Terminate this Action 12.)  But the plain language of the statute shows otherwise.  The Indiana

legislature could have defined disinterestedness to conform with Rule 23.1's requirement that a

plaintiff show a substantial likelihood of personal liability on the part of a director, but it opted

instead to set the bar much lower, and allow the derivative action to proceed if the allegation of

personal liability on the part of a SLC member is not insubstantial or frivolous.  It thus plainly

allowed for derivative cases to proceed where, as here, Plaintiffs have not shown a substantial

likelihood that they would prevail in establishing director liability, but they likewise have not

advanced a frivolous or insubstantial claim.  In other words, while I have found that there is no

substantial likelihood that they will prevail, there is – given the seriousness of the wrongdoing

that occurred on the Board's watch, the red flags, and the failure to conduct a full internal

investigation until after the Government advised of its intention to indict – some chance that they

would, and that is sufficient under Section 23-1-32-4.

While this outcome might suggest that the protection afforded by Section 23-1-32-4 is

illusory, that is not the case.  Corporations wishing to take advantage of the safe harbor of that

statute may appoint an SLC comprised of directors who are not defendants (such as directors

joining the Board after the alleged wrongdoing), if there are any, or may appoint a SLC

comprised of non-directors.  Ind. Code Ann. § 23-1-32-4(a) ("the board of directors may

establish a committee consisting of three (3) or more disinterested directors or other disinterested

persons"). ITT's Board chose not to do so here. Had it done so, its SLC's conclusions would have been conclusive under the statute. But Indiana law permits me to terminate this action based on the conclusions of a SLC comprised of director-defendants only if the case is frivolous or insubstantial (or brought solely to harass), a finding I cannot make in this case. The SLC members may well have been disinterested as that term is understood in common parlance, but Indiana law imposes a much narrower definition, which precludes termination in these circumstances.

### III. Conclusion

ITT and the Director Defendants' Motions to Dismiss are **GRANTED** to the extent that the Third Amended Complaint relies on demand futility, and Plaintiff Wilkinson's claims are dismissed with prejudice. The SLC's Motion to Terminate this Action is **DENIED**, and the case will proceed to the extent that the Third Amended Complaint relies on demand made.

The Clerk of Court is respectfully directed to terminate the pending motions. (Docs. 43, 46, 58.) The Parties are directed to appear for a status conference on September 29, 2009 at 9:30 a.m.

**SO ORDERED.**

Dated: September 8, 2009
      White Plains, New York

                                    CATHY SEIBEL, U.S.D.J.

-27-